# CAIRO *v.* ZANE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF ILLINOIS.

No. 210. Argued April 13, 14, 1893. — Decided April 24, 1893.

In accordance with a previous resolution of the city council of Cairo, Illinois, an election was duly held there on the 28th of May, 1867, " for the purpose of voting upon the question of the city's issuing $100,000 in twenty-year bonds, drawing eight per cent interest, as a subscription to the capital stock of the Cairo and Vincennes Railroad "; and it was, by a vote of 695 to 1, " declared to be the wish of the people that the said sum of $100,000 be so subscribed." Such subscription was accordingly made. In November following the railroad company and the city further agreed that the railroad company should commence work within six months and push it with dispatch; that the city should issue its bonds to the amount of $50,000, when the road should be completed to the boundary line between Alexander and Pulaski Counties, and a like amount when it should be completed to the boundary line between Pulaski and Johnson Counties, and that each amount when issued should be delivered to the railroad company in exchange for a like amount of its stock; and that the city should, as each issue of stock was made, sell it to the railroad company for the sum of $2500 in bonds of the city. In July, 1871, an ordinance was passed authorizing this contract to be carried out; and in December, 1872, the city, by its trustee, delivered to the railroad company bonds to the amount of $100,000, the company delivered to the trustee for the city certificates of stock to the like amount and bonds of the city to the amount of $5000, and the trustee thereupon transferred the certificates of stock to the company. The mayor of the city then, on the 14th of December, 1872, reported to the auditor of the State of Illinois an issue of bonds of the city to the amount of $95,000 for subscriptions to the stock of the railroad company, and the bonds were certified by the auditor as registered pursuant to the laws of Illinois, " to fund and provide for paying the railroad debts of counties, townships, cities and towns." The bonds were sold by the company and passed into the hands of innocent holders for value. The city having failed to pay the coupons on said bonds as maturing, one of the holders brought suit to recover the same. *Held,*

(1) That the executed agreement on the part of the city to subscribe for stock, and on the part of the company to receive bonds in payment therefor, was not affected by the further act of the city in parting with its stock to the company in consideration of a return of a portion of the bonds; and that whatever wrong might have

been committed by the city council in the latter transaction, did. not vitiate the bonds issued under the former, after they had passed into the hands of a *bona fide* holder; ·

(2) That, as the statute of the State had provided for the registry of municipal bonds in such cases and a certificate thereof, such certificate should be held to be sufficient evidence to a purchaser of the existence of the facts, upon which alone the bonds could be. registered;

(3) That the bonds were valid in the hands of a *bona fide* holder;

(4) That under the laws of Illinois, governing the issue, the city had the power to make the bonds payable in New York;

(5) That under the settled rule in Illinois the coupons drew interest, after maturity.

On August 3, 1883, defendant in error commenced suit in the Circuit Court of the United States for the Southern District of Illinois, on certain coupons attached to bonds issued by the city of Cairo, plaintiff in error. After answer had been filed a trial was had, which resulted in a judgment in favor of plaintiff for $8556.36. This judgment was entered on February 27, 1888, and to reverse such judgment the city sued out a writ of error from this court.

The facts as developed in the case are these : On May 28, 1867, a resolution passed the city council of the city of Cairo, ordering a special election "for the purpose of voting upon the question of the city issuing $100,000 in twenty-year bonds, drawing eight per cent interest, as a subscription to the capital stock of the Cairo and Vincennes Railroad." An election was duly had, at which 695 votes were cast in favor of the subscription and one vote against. At a meeting of the council on July 1 the vote was canvassed, and a motion carried "that it be declared the wish of the people that the said sum of $100,000 be so subscribed." On November 5, 1867, the journal of the proceedings of the city council contains this record :

"A proposition was received from the Cairo and Vincennes Railroad Company proposing to purchase from the city of Cairo the $100,000 capital stock of said company subscribed by said city, accompanied by the following contract for consideration, viz. :

"This contract, made and entered into by and between the

city of Cairo, Illinois, party of the first part, and the Cairo and Vincennes' Railroad Company, party of the second part, witnesseth :

" That whereas heretofore, to wit, on the first day of July, 1867, by a vote of the electors of the city of Cairo, Illinois, at an election held in said city, the mayor and city council of Cairo were authorized to make a subscription of one hundred thousand dollars to the capital stock of the Cairo and Vincennes Railroad Company, and to pay for said stock in bonds of the city of Cairo of the denomination of five hundred dollars, with the bonds to run for twenty years and to bear interest at the rate of eight per centum, payable half yearly, on the first days of January and July of each year, in the city of New York, said city of Cairo being required by the laws of this State to issue instalments of said bonds from time to time, as assessments may be made upon said stock by said railroad company ;

" And whereas the said railroad company proposes to guarantee that work on said road shall be commenced at Cairo within six months from the date of this contract, and that the construction of the road-bed and laying the track from Cairo northward shall be pushed with reasonable dispatch, and also to release the city of Cairo from the obligation to issue any part of said bonds until said railroad shall be built from Cairo to the boundary line between Alexander and Pulaski Counties, and also to purchase of the city of Cairo the stock to be issued to said city upon the delivering of the city bonds aforesaid, it is therefore hereby stipulated and agreed by and between the parties aforesaid as follows :

" ARTICLE 1. The party of the second part agrees that work on said road shall be commenced at Cairo within six months of the date of this contract, and that the construction of the road-bed and laying of the track from Cairo northward shall be pushed with reasonable dispatch.

" ARTICLE 2. The party of the second part agrees that, instead of the city of Cairo issuing bonds in payment for stock upon assessments made from time to time by said railroad company, the city of Cairo shall issue fifty thousand dollars of bonds

and deliver the same to said company in payment for stock when the track of said road shall have been laid to the boundary line between the counties of Alexander and Pulaski and cars shall have run thereon, and the said city shall issue fifty thousand dollars of bonds as aforesaid and deliver the same to said company in payment for stock when the track of said company shall have been laid and cars shall have run thereon from the city of Cairo through Pulaski County to the boundary line between that county and Johnson County, Illinois.

"ARTICLE 3. The party of the first part hereby agrees to issue the fifty thousand dollars of bonds of the city of Cairo in payment for fifty thousand dollars of stock of said Cairo and Vincennes Railroad Company, and deliver said bonds to said company whenever the railroad track of said company shall be laid from Cairo to the boundary line between Alexander and Pulaski Counties and cars shall have run thereon ; and also to issue fifty thousand dollars of said bonds in payment for stock as aforesaid, and deliver the same to said company whenever the railroad track of said company shall have been laid from the city of Cairo to the boundary line between Pulaski and Johnson Counties and cars shall have run thereon.

"ARTICLE 4. And whereas the early construction of said road is of vast importance to the city of Cairo, therefore, in consideration of the stipulations made by the party of the second part in articles first and second of this contract and in consideration of the sum of five thousand dollars to be paid by the said party of the second part as hereinafter stated, the party of the first part hereby agrees to sell and transfer to said party of the second part the one hundred thousand dollars stock of said railroad company to be issued to the city of Cairo, Illinois, in payment for one hundred thousand city bonds, at and for the sum of five thousand dollars, as follows : When fifty thousand dollars of the stock of said company shall be issued to the city of Cairo, the party of the first part agrees to transfer and assign the same to the party of the second part on payment of twenty-five hundred dollars in Cairo city bonds,

and when the fifty thousand dollars of the stock of said company shall be issued as aforesaid the party of the first part agrees to transfer and assign the same to the party of the second part on payment of twenty-five hundred dollars in Cairo city bonds.

"Alderman Baker then offered the following resolution, viz.:

"*Resolved*, That the contract between the city of Cairo and the Cairo and Vincennes Railroad Company this evening laid before the city council by the president of said company be, and the same is hereby, approved, ratified, and confirmed by the city council of the city of Cairo, and that the proper city officers be, and are hereby, authorized, empowered, and instructed to sign, seal, and execute said contract for and in behalf of the city.

"Alderman Vincent moved that said resolutions be adopted; which motion was carried by the following vote, viz.:

"Ayes — Baker, Halliday, Hamilton, Lansden, Redman, Rittenhouse, Vincent and Webb.

"Nays — None."

On July 22, 1871, this ordinance was passed:

"An ordinance to authorize the subscription of $100,000 to the Cairo and Vincennes Railroad Company, and for other purposes.

"Whereas by an agreement entered into between the Cairo and Vincennes Railroad Company and the city of Cairo, and approved by the city council November 25, 1867, it is provided that the stock, amounting to $100,000, to be issued by the Cairo and Vincennes Railroad Company to the city for the subscription of that amount should be sold by the city to the said company upon certain conditions as expressed in said contract; and whereas it is understood that said company are willing to extend the time for the issue of said bonds and the commencement of the payment of interest on the same: Therefore,

"Be it ordained by the city council of the city of Cairo —

"SEC. 1. That the mayor of the city be, and is hereby,

authorized and instructed to subscribe on behalf of the city of Cairo to the capital stock of the Cairo and Vincennes Railroad Company in the sum of one hundred thousand dollars, said subscription to be payable in bonds of the city, as hereinafter provided for; that the mayor, city clerk and city comptroller be, and they are hereby, authorized and instructed to have prepared and to sign and seal bonds of the city to the amount of one hundred thousand dollars, to be issued to said railroad company, said bonds to be in such sums as the said company may desire, to bear interest at the rate of 8 per cent per annum, and to be payable twenty years after the date thereof, with coupons attached for the payment of the interest semi-annually on the same; that the mayor is hereby authorized and instructed to take charge of said bonds when prepared and signed, sealed, and ready for delivery, and is authorized and instructed to deliver the same to some responsible banking, loan or trust company, trustee or trustees, located or residing in the city of New York or elsewhere, as may be agreed upon by him and said railroad company, said bonds to be held by said banking, loan or trust company, trustee or trustees, in escrow, and to deliver up to the said Cairo and Vincennes Railroad Company when the said Cairo and Vincennes railroad has been constructed, that is to say, has been put in good ordinary running order from the city of Cairo, Illinois, to the city of Vincennes, Indiana, and the cars shall have run thereon, and not before, provided work on said road shall be resumed by or before October 1st next, and said road shall be finished by or before the first day of August, 1873; and provided also that the interest accruing on said bonds previous to their delivery to said railroad company shall not enure to the benefit of said railroad company, but the coupons for all accrued interest shall be detached from said bonds previous to their delivery to said railroad company, and be returned to said city of Cairo, so that interest shall not be paid or accrued to said railroad company before the time when said company shall be entitled to receive said bonds according to the condition herein expressed.

"Sec. 2. It shall be and it is hereby made the duty of the

banking, loan or trust company, or trustees which shall be chosen or selected to hold such bonds, as hereinbefore provided, to deliver up the said bonds to said railroad company upon the said company's issuing to said city and delivering to said trustee one hundred thousand ($100,000) dollars of paid-up stock in said railroad company, which said stock the said trustee is hereby authorized and directed to sell to said railroad company for five thousand dollars ($5000) of Cairo city bonds, so as thereby to carry out the provisions of the agreement entered into November 25, 1867, by and between said city and railroad company.

"Approved July 22, 1871.     JOHN M. LANSDEN, *Mayor.*

"Attest: M. J. HOWLEY, *Clerk.*"

On January 6, 1873, these proceedings were had:

"The finance committee also reported that they had received from A. B. Safford, trustee, five bonds, numbered from 96 to 100, inclusive, for $1000 each, issued in favor of Cairo and Vincennes Railroad Company, and also 100 coupons detached from said bonds before being transferred to said railroad company. The committee reported that they had destroyed said bonds by burning, and asked that their action be approved.

"Alderman Safford moved that said report be received and the action of the committee sanctioned. Carried.

"A communication was read from A. B. Safford, trustee, stating that he had, on the 4th day of December, delivered to the Cairo and Vincennes Railroad Company one hundred thousand dollars in bonds of the city of Cairo, from which he previously detached all the January, 1873, coupons, (subject to the order of the city;) that in return he received from said railroad company (a certificate) for one hundred thousand dollars paid-up stock of said company, and in accordance with the provisions of ordinance 119, approved July 22, 1871, he had transferred said stock to said railroad company and received from said company therefor five thousand dollars in said bonds. Said trustee further stated in his communication that as he had detached all the January 1, 1873, coupons, the

company is entitled to sixteen days' interest, amounting to $337.82.

"Accompanying said communication was a copy of a receipt of Councilman Wood, chairman of the finance committee, for said five thousand dollars in bonds and for said detached coupons, a copy of a receipt of the Cairo and Vincennes Railroad Company, by Edward F. Winslow, attorney-in-fact, for said one hundred thousand dollars in bonds, and also a copy of a sworn certificate of E. F. Winslow, of the firm of Winslow & Wilson, and Charles O. Wood to the effect that on the 13th day of December, 1872, a through train passed over the Cairo and Vincennes railroad from the city of Vincennes to the end of the track at Cairo."

On December 14, 1872, the mayor of the city furnished to the auditor of the State of Illinois the following certificate of registration:

*" Certificate of Registration.*

" STATE OF ILLINOIS, COUNTY OF ALEXANDER.

" CITY OF CAIRO, *December 14th,* 1872.

*" To the Auditor of Public Accounts of the State of Illinois.*

"SIR: I hereby certify that the following-described bonds are entitled to registration in your office under the provisions of the act entitled 'An act to fund and provide for paying the railroad debts of counties, townships, cities, and towns,' in force April 16, 1869, the bonds being numbered from No. 1 to No. 95, inclusive, for $1000 each, dated July 1st, 1872, and payable July 1st, 1892, being in all 95 bonds and amounting to $95,000 and bearing interest at the rate of eight per cent per annum, payable semi-annually on the first days of January and July. These bonds are issued by the city of Cairo, in the county of Alexander and State of Illinois, to the Cairo and Vincennes Railroad Company, under and by authority of the provisions of 'An act to incorporate the Cairo and Vincennes Railroad Company,' approved March 6th, A. D. 1867, and the general act of the legislature of this State for subscriptions of stock, etc., in railroad companies, approved November 6th, 1849, and by a vote of the people of said city of Cairo at an election

held on the first day of July, A. D. 1867; and I, as the mayor of said city of Cairo, do hereby certify that all the preliminary conditions in the act 'in force April 16th, 1869,' required to be done to authorize the registration of these bonds and to entitle them to the benefits of said act last referred to have been fully complied with, to the best of my knowledge and belief.

"JOHN M. LANSDEN,

"*Mayor of the City of Cairo, Illinois.*

"Subscribed and sworn to by the said John M. Lansden, mayor, etc., before me this 14th day of December, A. D. 1872.

"[SEAL.]     H. H. CANDEE, *Notary Public.*"

The bonds were, with the endorsements, in the following form:

"*Bond of City of Cairo.*

"(Number —.) UNITED STATES OF AMERICA.  ($1000.)

"*Bond of the City of Cairo, State of Illinois, issued in Payment of Stock in the Cairo and Vincennes Railroad Company.*

"Know all men by these presents that the city of Cairo, in the county of Alexander and State of Illinois, acknowledges itself indebted and firmly bound to the Cairo and Vincennes Railroad Company in the sum of one thousand dollars, which sum the said city of Cairo promises to pay to the said Cairo and Vincennes Railroad Company or bearer, at the National Bank of Commerce, in the city of New $1000 York, on the first day of July, 1892, together with interest thereon from the first day of July, 1872, at the rate of eight per cent per annum, which interest shall be payable semi-annually on the first days of January and July in each year, on the presentation and delivery at said National Bank of Commerce, New York, of the coupons of interest hereto attached.

"This bond is issued in pursuance of an ordinance passed by the city council of said city of Cairo and authorized by a vote of the citizens of said city and in accordance with the laws of the State of Illinois.

" In testimony whereof the said city of Cairo has executed this bond by the mayor, city clerk, and city comptroller thereof signing their names under the ordinance authorizing the same and affixing the seal of said city, at said city of Cairo, on the 1st day of July, A. D. 1872.

" J. M. LANSDEN, *Mayor.*

" E. A. BURNETT, *City Comptroller.*

"M. J. HOWLEY, *City Clerk.*

" [City of Cairo Seal.]

" (Endorsement on above bond : )

" AUDITOR'S OFFICE, ILLINOIS.

" I, Charles E. Lippincott, auditor of public accounts of the State of Illinois, do hereby certify that the within bond has been registered in this office this day, pursuant to the provisions of an act entitled ' An act to fund and provide for paying the railroad debts of counties, townships, cities and towns,' in force April 16, 1869.

" In testimony whereof I have hereunto subscribed my name and affixed the seal of my office the day and year aforesaid.

" [SEAL.]        C. E. LIPPINCOTT, *Auditor P. A.*"

The coupons attached were in the ordinary form of such instruments, being simply an acknowledgment of so much due at a given date, for interest on the bond.

The statutes and constitutional provisions bearing upon the question are the following : First. The act incorporating the Cairo and Vincennes Railroad Company, passed March 6, 1867, (Private Laws of Illinois, 1867, vol. 2, p. 558,) the 10th section of which authorized towns, cities, or counties, through or near which the railroad should pass, to subscribe for and take stock in the company, and issue bonds in payment for such stock of five hundred dollars each, and required, as a condition of such subscription, a majority of the legal votes cast at an election held upon the question. Second. The general railroad law of November 6, 1849, (Laws of Illinois, 1849, second session, p. 18,) authorizing cities and counties to subscribe for stock in

railroad companies, and to pay for such stock in bonds. Third. An act passed February 9, 1869, amending the act incorporating the Cairo and Vincennes Railroad Company, (vol. 3, Private Laws of Illinois, 1869, p. 259,) the third section of which is as follows:

"SEC. 3. *Be it further enacted*, That all contracts made by towns, cities, and counties, into, through, or near which the Cairo and Vincennes railroad shall run, whereby, as an inducement for the construction of said railroad, such towns, cities, and counties agreed, upon the completion of certain portions of said railroad, to sell to the said company, at a nominal price, the stock of said company which such towns, cities, or counties, by a vote of their electors, had theretofore subscribed and agreed to issue bonds in payment thereof, thereby in effect agreeing to make a donation to said company of certain amounts of the bonds of such towns, cities, or counties, as an inducement for the construction of said railroad, are hereby declared to be valid and binding upon such towns, cities, and counties, and shall be carried into effect, in good faith, by the same; and all orders and notices of elections and elections and returns of such elections in respect to such subscriptions of stock to said company, in any such towns, cities, and counties, are hereby declared to be valid and binding upon such towns, cities, and counties."

Fourth. An act approved April 6, 1869, to fund and provide for paying the railroad debts of counties, townships, cities, and towns. (Public Laws, Illinois, 1869, p. 316.) That act authorized the registering of bonds by the state auditor. Section 7 forbade the registry, unless the debt was authorized by a majority of the legal votes cast at an election duly held and until the railroad aided had been completed, and cars run thereon, and all conditions prescribed in the subscription had been fully complied with. It then continued as follows: "And the presiding judge of the county court, or the supervisor of the township, or the chief executive officer of the city or town, that shall have issued bonds to any railway or railways, immediately upon the completion of the same near to, into, or through such county, township, city, or town,

as may have been agreed upon, and the running of the cars thereon, shall certify under oath that all the preliminary conditions in this act required to be done to authorize the registration of such bonds, and to entitle them to the benefits of this act, have been complied with, and shall transmit the same to the state auditor, with a statement of the date, amount, number, maturity, and rate of interest of such bonds, and to what company and under what law issued, and thereupon the said bonds shall be subject to registration by the state auditor as is hereinbefore provided." Fifth. These sections of the constitution of 1870:

"No county, city or town, township, or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation: *Provided, however,* That the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption." 1 Charters and Constitutions, 491; 1 Starr & Curtis's Stat. 167.

### ARTICLE 9, SECTION 12.

"No county, city, township, school district, or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes, previous to the incurring of such indebtedness. Any county, city, school district, or other municipal corporation incurring any indebtedness as aforesaid shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same. This section shall not be construed to prevent any county, city, township, school district, or other municipal corporation from issuing their bonds

in compliance with any vote of the people which may have been had prior to the adoption of this constitution in pursuance of any law providing therefor." 1 Charters and Constitutions, 486; 1 Starr & Curtis's Stat. 153.

### SCHEDULE.

"That no inconvenience may arise from the alterations and amendments made in the constitution of this State, and to carry the same into complete effect, it is hereby ordained and declared:

"SECTION 1. That all laws in force at the adoption of this constitution, not inconsistent therewith, and all rights, actions, prosecutions, claims, and contracts of this State, individuals or bodies corporate, shall continue to be as valid as if this constitution had not been adopted." 1 Charters and Constitutions, 492; 1 Starr and Curtis's Stat. 168.

*Mr. William B. Gilbert* for plaintiff in error.

I. The Illinois Supreme Court and the United States Circuit Court of Appeals, Seventh Circuit, by recent decisions, since rendition of judgment below, have settled the questions involved in this case in favor of defendant in error. *Choisser* v. *The People*, 140 Illinois, 21; *Post* v. *Pulaski County*, 9 U. S. App. 1.

II. The contract of November 25, 1867, cannot be sustained as a valid existing contract, which the constitution of 1870 could not impair. *Spangler* v. *Jacoly*, 14 Illinois, 297; *S. C.* 58 Am. Dec. 571; *People* v. *Staine*, 35 Illinois, 121; *Ryan* v. *Lynch*, 68 Illinois, 160; *Macoupin County* v. *The People*, 58 Illinois, 191; *Madison County* v. *The People*, 58 Illinois, 456.

III. The void contract of November 25, 1867, could not be, and was not legalized by the amended charter. *Choisser* v. *The People* and *Post* v. *Pulaski County*, above cited; *Marshall* v. *Silliman*, 61 Illinois, 218; *Gaddis* v. *Richland County*, 92 Illinois, 119; *Williams* v. *The People*, 132 Illinois, 574; *Barnes* v. *Lacon*, 84 Illinois, 461; *Elmwood* v. *Marcy*, 97 U. S. 289; *People* v. *Chicago*, 51 Illinois, 17; *Lovingston* v. *Wider*, 53 Illinois, 302.

IV. Neither the general law of 1849, nor the charter of the railroad company if at all material, authorized issuance of any bonds as a donation. The distinction between a subscription and a donation is well understood and recognized in both lexicography and public parlance, as well as law. *Concord* v. *Portsmouth Savings Bank*, 92 U. S. 625 ; *Schoeffer* v. *Bonham*, 95 Illinois, 368.

V. The bonds and coupons having been issued since the adoption of the constitution of 1870, as a mere donation and not as authorized under existing laws by any vote of the people, were absolutely void for want of power to issue same. *Choisser* v. *People* and *Post* v. *Pulaski County*, above cited. The authority to act at all depends upon the existence of the requisite fact, as shown by the record, and not upon its ascertainment and determination by *any one*, and in consequence, that all persons claiming under the exercise of such power might be put to such proof of the fact made a condition of its lawfulness, notwithstanding any recitals in the instrument. *Dixon County* v. *Field*, 111 U. S. 83 ; *Northern Bank of Toledo* v. *Porter Township*, 110 U. S. 608 ; *Hayes* v. *Holly Springs*, 114 U. S. 120 ; *Katzenberger* v. *Aberdeen*, 121 U. S. 172 ; *Concord* v. *Robinson*, 121 U. S. 165 ; *German Savings Bank* v. *Franklin County*, 128 U. S. 526.

The unbroken line of decisions, admitting recitals in bonds as estoppels, is based upon the principle that, "These recitals are municipal decisions made by the *appointed tribunal selected by the legislature* according to a true construction of the legislative enactment under which they acted, and are therefore *res judicata*." *Marcy* v. *Oswego*, 92 U. S. 637 ; *Commissioners* v. *January*, 94 U. S. 202 ; *Commissioners* v. *Bolles*, 94 U. S. 104 ; *Rock Creek* v. *Strong*, 96 U. S. 271 ; *Buchanan* v. *Litchfield*, 102 U. S. 278.

VI. The bonds not having been issued "in compliance with" any vote of the people, and no tax provided for their payment before or after their issuance, their issuance was in violation of art. 9, sec. 12, of constitution of 1870, and they are void. *Buchanan* v. *Litchfield*, 102 U. S. 278.

VII. The act approved April 16, 1869, does not aid the

plaintiff on the question of recitals or validity.  *German Savings Bank* v. *Franklin County*, 128 U. S. 526; *Dixon County* v. *Field*, 111 U. S. 83; *Crow* v. *Oxford*, 119 U. S. 215.

VIII.  The city is not chargeable with interest on the coupons after maturity in the absence of any agreement in the coupons to pay interest.  The local laws of Illinois forbid such interest.  *Madison County* v. *Bartlett*, 1 Scammon, 67; *Pike County* v. *Hosford*, 11 Illinois, 170; *Pekin* v. *Reynolds*, 31 Illinois, 529; *S. C.* 83 Am. Dec. 244; *Chicago* v. *People*, 56 Illinois, 334; *South Park Commissioners* v. *Dunlevy*, 91 Illinois, 49.

By the laws of Illinois, " cities and counties, unless specially authorized by legislative enactment, have no power to make their indebtedness payable at any other place than at their treasury "; and " the fact that a coupon is made payable in New York or elsewhere than at the treasury of the county issuing it, will not invalidate it; the objectionable words will be regarded as surplusage."  *People* v. *Tazewell County*, 22 Illinois, 147; *Pekin* v. *Reynolds*, 31 Illinois, 529; *Sherlock* v. *Winnetka*, 68 Illinois, 530; *Enfield* v. *Jordan*, 119 U. S. 680.

Even if the bonds and coupons had been lawfully made payable in New York, such bonds and coupons must still be " deemed and considered as governed by the laws of the State of Illinois," and " not be affected by the laws of the State or country where the same shall be made payable," as specially provided by the laws of Illinois in force when said bonds were issued.  Sess. Laws, 1857, p. 38.

By the " contract or loan " in this case, there was a contract concerning interest, viz. : 8 per cent on the amount of the bond and nothing on the interest coupons; and although the bond and interest coupons are made payable out of the State, yet the case is plainly within the said provision of the law of 1857, and must be "governed by the laws of the State of Illinois," and no interest allowed on coupons.  To allow interest is to give bondholder something he knew the law did not give him when he purchased his bonds.

*Mr. George A. Sanders* for defendant in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

It is insisted that these bonds were void because, issued after the restrictive provisions of the constitution of 1870 had come into effect, they were in fact a mere donation, and the only authority given by the people prior to the constitution of 1870 was to issue bonds in payment of a subscription. This contention cannot be sustained. There was a vote authorizing a subscription. The bonds were issued by the city, and received by the company in payment of a subscription, and stock for an equal amount was issued by the company to the city. It is true the stock thus received was immediately thereafter sold to the company for $5000 of the city bonds, a portion of the bonds thus issued, and that this sale was in pursuance of an agreement made by the city long prior to the execution of the bonds. And it is urged that the form of the transaction must be ignored; that the resultant fact is that the company has $95,000 of the city bonds, and the city nothing; and that thus substantially there was a donation of $95,000 of bonds. But the result does not determine the true nature of the transaction. The same result would have followed if the city had given away the stock to a third party. The fact is that the city issued its $100,000 of bonds, and received its $100,000 of stock; and the wrong, if any there were, on the part of the council, was not in carrying out the subscription as directed by the vote of the people, but in wrongfully disposing of the stock received. But surely a wrong in that matter does not affect the question of the validity of the bonds, nor can it be presented as a defence against one who has purchased in good faith the bonds thus issued. In the case of *Anderson County Commissioners* v. *Beal*, 113 U. S. 227, it appeared that after bonds had been voted by the county, at an election held on September 13, 1869, the county board, on November 5, passed an order directing a subscription in accordance with the terms of the vote, and also " that the stock above subscribed for by this board in behalf of Anderson County is hereby sold and transferred, for and in

consideration of the sum of one dollar, the receipt whereof is hereby acknowledged, to James F. Joy, president of said railroad company, and the chairman of this board is authorized to sign a transfer of said stock to said James F. Joy, and to assign the certificate for said stock issued to Anderson County by said railroad company, and to authorize in such assignment the necessary transfer of said stock on the books of said company." And it was averred that this transfer thus ordered was for the benefit of the railroad company. In reference to this, Mr. Justice Blatchford, speaking for the court, observed (p. 240): " When the bonds were delivered to the company the transaction was complete, and the bonds, as they afterwards passed to *bona fide* holders, passed free from any impairment by reason of any dealing by the board with the stock subscribed for to which the county became entitled by the issuing and delivery of the bonds. The board may have committed an improper act in parting with the stock, but that is no concern of a *bona fide* holder of the bonds or coupons." And in *Maxcy* v. *Williamson County*, 72 Illinois, 207, it appeared, as here, that after an election authorizing a subscription of $100,000 to the stock of a railroad company the county court entered into an agreement to sell the $100,000 of stock to the railroad company for $5000, a transaction, it will be perceived, precisely like the one before us. The validity of the bonds thus issued in payment of this subscription was thereafter challenged in a suit by taxpayers to restrain the collection of taxes levied to pay the interest thereon. Their validity was sustained, and in respect to this transfer of the stock the court, on p. 212, says: "We fail to perceive how the sale of the certificate of stock to the company for $5000 can in any manner affect the rights of the holders of the bonds of the county. It surely is not intended to be insisted that because the county has, by any means, lost the consideration it received for the bonds, innocent holders, who had nothing whatever to do with the sale of the certificate, must lose their bonds."

It is said that a different rule has since been established in Illinois, and the cases of *Choisser* v. *The People*, 140 Illinois, 21, and of *Post* v. *Pulaski County*, decided by the Circuit

Court of Appeals for the Seventh Circuit, 9 U. S. App. 1, are cited. But even if this were so, it was not established until long after the plaintiff had purchased these bonds, and he would doubtless be entitled to claim the benefit of the rule existing when he made his purchase; and the facts as they appear in these two cases are substantially unlike those in the case before us. Thus, in *Choisser* v. *The People*, the vote to subscribe $100,000 of stock was on October 5, 1867, and on November 28 following, an agreement was entered into between the company and the county court, acting on behalf of the county, that $100,000 in stock should be issued, but that the stock should be returned back to the company for the sum of $5000, payable on the redelivery to the city of that amount of county bonds. When the bonds came to be issued, the record made by the county court recited that the $100,000 of the capital stock should be sold back to the company for $5000 of county bonds, " thereby making a payment of $95,000 of Saline County bonds to said company as a donation." And no stock was in fact issued by the company, or received by the county, and only $95,000 of bonds were issued by the county, or delivered to the company. In short, the parties to the transaction treated it as though it was a donation of $95,000 of bonds, and it was this transaction which was condemned as unauthorized by a vote prior to the constitution. Yet, even in that case, the court was careful to limit its decision to a case in which only the rights of the railroad company, the party receiving this $95,000 of bonds, were concerned, for it says: " The only presumption arising from these facts is that said bonds are still in the hands of the railroad company, and no question, therefore, is presented as to how far the alleged invalidity of said bonds would be affected by those conclusive presumptions which the law raises for the protection of *bona fide* holders of commercial paper. . . . Nothing is before us except the mere question of the legality of these bonds, as between the county and the railroad company, the original parties thereto." And the case in the Circuit Court of Appeals is simply a counterpart of the case in the Supreme Court.

But the case before us is entirely different. The parties did not treat it as a donation. The city issued the full amount of $100,000 in bonds, and the company issued a certificate for $100,000 of stock, and until the receipt of this certificate, no sale had been made of it. All that the record shows was an agreement on the part of the city to sell at a named price. Nowhere is it shown that the company agreed absolutely to purchase. It was, until after the receipt of the stock, an unaccepted offer on the part of the city. No contract was signed by the company. All we have are the recitals of the record of the city. Of course, such recitals do not bind the company. Thus, on November 5, 1867, it is said that a proposition was received from the company to purchase the stock. What that proposition was is not disclosed. It is stated that it is accompanied by a contract, tendered to the city for consideration, which contract also recites that the company proposes to purchase. That contract nowhere binds the company to purchase, but does bind the city to sell on payment of $5000 in Cairo city bonds. So in the proceedings of July 21, 1871, while there is a recital of the making of an agreement for the sale of the stock, yet such recital did not bind the company; and if the contract referred to was that copied into the record of November, 1867, it contained nothing binding the company. And the second section of the ordinance then passed (the first section having provided for placing the bonds in escrow) made it the duty of the trustee holding these bonds in escrow to deliver them to the company upon its issuing to the city, and delivering to him, $100,000 of its paid-up stock, and then authorized and directed him to sell such stock to the company for $5000 of Cairo city bonds. But nowhere in this or any other of the ordinances or agreements in evidence is there any promise on the part of the company to take $95,000 in city bonds, and release the city from all obligations growing out of the subscription. On the contrary, so far as is disclosed, when the trustee delivered the $100,000 in bonds and received the $100,000 in stock, there was nothing casting any obligation on the company to repurchase its stock, or to return to the city any portion of

the bonds. The city had offered to sell, but it had not agreed to buy. It could have stopped with the receipt of the $100,000 of bonds, and left the city to do what it pleased with the stock.

There is, therefore, not presented the case of an ignoring of the fact or terms of a subscription. Everything authorized by the vote of the people was done, and fully done, and whatever wrong may have been committed by the city council in its proffer of sale and subsequent sale of the stock could not vitiate the bonds after they had passed into the hands of a *bona fide* holder.

But, further: The bonds on their face show that they were issued in payment of stock in the railroad company, and recite that they were issued in pursuance of an ordinance of the city council, and authorized by a vote of the citizens, and in accordance with the laws of the State; and they were duly registered by the auditor of the State, and his certificate of registry was endorsed on the back. It is true that the recitals do not show when the ordinance was passed, or the election held, and do not refer by title or otherwise to the particular statute granting the authority, and the bonds were dated and issued after the constitution of 1870 had come into force. It is also true that the certificate of registry is not conclusive that the bonds were issued in full compliance with the terms and conditions of a subscription. *German Savings Bank* v. *Franklin County*, 128 U. S. 526, 540.

But surely these recitals and this certificate have significance. It is unnecessary to affirm that the certificates are so "clear and unambiguous," *School District* v. *Stone*, 106 U. S. 183, 187, as to estop the city from showing that the bonds were issued in violation or without authority of law, or that they, in conjunction with the certificate, foreclose all possible defences. But when the law of the State provides for registry of municipal bonds and a certificate thereof, such certificate should be held as sufficient evidence to a purchaser of the existence of those facts upon which alone bonds can be registered. If the plaintiff in this case, not resting upon the mere terms of the certificate, had examined the records of the

auditor's office, he would have found there the certificate, under oath, of the mayor of the city, of the election, its date, and facts necessary to warrant the issue of the bonds, such officer being the one named in the statute as the one to furnish to the auditor the evidence necessary to justify the registry. Can it be that a purchaser, with this evidence before him, is not protected by the statement upon the face of the bonds that they were issued in payment of a subscription? Is it his duty to examine all the proceedings, to see whether that which was a subscription in the first instance, was called a subscription all the way through, and was named as a subscription in the bonds, had not been transformed by some action of the city council into a donation? It will be borne in mind that it is not a matter of law, but of fact, in respect to which an estoppel is urged against the city by virtue of the recitals and the fact of registry. But it is unnecessary to pursue this line of thought further. We are of opinion that the bonds were properly held valid in the hands of a *bona fide* holder.

It is finally objected that the court erred in allowing interest on the coupons. They were made payable in New York, and as such drew interest according to the laws of New York. *Pana* v. *Bowler*, 107 U. S. 529, 546; *Walnut* v. *Wade*, 103 U. S. 683, 696. Counsel, not questioning the fact that such have been the frequent rulings, insists that in this case, as found by the court, the bonds were issued under the law of 1849; that that does not authorize specifically the issue of bonds payable outside of the State; that in *People* v. *Tazewell County*, 22 Illinois, 147, it was decided that "counties and municipal corporations, unless specially authorized by legislative enactment, have no power to make their indebtedness payable at any other place than at their treasury," a decision reaffirmed in *Johnson* v. *County of Stark*, 24 Illinois, 75, 91, and adhered to in *Sherlock* v. *Winnetka*, 68 Illinois, 530.

We do not understand the findings of the court in the manner claimed. The finding is simply that the bonds are of the denomination of $1000 each, as authorized under and by the law of 1849, and not of the denomination of $500 each, as required by the charter of the railroad company. But there

is nothing in the nature of things preventing the city from exercising all the powers conferred by two or more acts, where the acts do not involve in and of themselves substantial contradictions. It is not a vital matter whether the bonds should be of $500 or $1000 each; and as the charter of the railroad company expressly authorized the issue of bonds payable in the city of New York, we see no reason why such stipulation could not be incorporated into a bond of the denomination of $1000, and the certificate of the mayor to the auditor is that the bonds were issued under the authority of both acts. *Knox County* v. *Ninth National Bank*, 147 U. S. 91. Indeed, counsel refers to the law of 1857, (Public Laws of Illinois, 1857, p. 38,) which provides that "where any contract or loan shall be made in this State . . . it shall and may be lawful to make the amount of principal and interest of such contract or loan payable in any other State or Territory of the United States." If that statute is applicable, then of course it is immaterial whether the bonds were issued under the general railroad law, or the act incorporating the railroad company. But it is unnecessary to consider this question at length. The settled rule in Illinois is, that coupons draw interest after maturity. *Harper* v. *Ely*, 70 Illinois, 581, 586; *Humphreys* v. *Morton*, 100 Illinois, 592; *Drury* v. *Wolfe*, 134 Illinois, 294, 297; *United States Mortgage Co.* v. *Sperry*, 138 U. S. 313, 340.

These are the only matters that we deem essential to consider. We see no error in the conclusions reached, and the judgment is, therefore, *Affirmed.*

Mr. Justice Gray did not hear the argument and takes no part in the decision of this case.