**AMERICAN TRUST CO. v. PROCTOR et al.**
**No. 2456.**

Circuit Court of Appeals, First Circuit.
July 1, 1930.

ANDERSON, Circuit Judge, dissenting.

Willard B. Luther, of Boston, Mass. (Peabody, Arnold, Batchelder & Luther, of Boston, Mass., on the brief), for appellant.

William G. Thompson, of Boston, Mass. (George E. Mears, of Boston, Mass., on the brief), for appellee receiver.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

In March, 1923, the New England Oil Refining Company, hereinafter referred to as the refining company, being in need of funds to finance its business of refining crude oil, entered into an arrangement with certain banks in Boston, hereinafter referred to as the syndicate, to supply it with the necessary funds. Under the arrangement, the syndicate was to be secured by trust receipts acknowledging that all raw materials purchased should remain the property of the syndicate as well as the refined product until sold.

The arrangement also included the organization of another corporation known as the New England Sales Company, which was officered and controlled by representatives of the syndicate, and which will be hereinafter referred to as the sales company. The function of the latter corporation under the arrangement was to purchase the refined product of the refining company and dispose of the same to the customers of the refining company and account to the syndicate for the proceeds.

So far as can be gathered from the record, the plan contemplated the supplying of funds by loans to the refining company to purchase its raw materials and to the sales company to purchase of the refining company the refined product, and through the purchase and sale of the refined products to provide a revolving fund, so called, for the refining company to finance its business, and from the profits eventually to pay the loans of the syndicate.

The terms of this arrangement were contained in four agreements executed at the same time under date of March 19, 1923, which are evidently so interrelated and having a single purpose that they should be construed together.

The first between the First National Bank of Boston as syndicate manager (since succeeded by the appellant) and the several members of the syndicate, defined the purposes of the syndicate, the relations and rights of the members, and the powers of the manager. The second, between the syndicate manager and the refining company, sets forth the method of acquiring raw material by the refining company through the loans from the syndicate, the form of the notes to be given, the form of the trust receipts, and the rights of the syndicate under the trust receipts in the raw materials and the refined products, and in the proceeds of any sales by the refining company direct to its customers. The third, between the refining company and the sales company, as we are given to understand by statements of counsel and a reference thereto in the contract between the syndicate manager and the sales company, though only the briefest statement of its terms are contained in the record, provided for the purchase of the refined products of the refining company by the sales company and the reselling of the same to the customers of the refining company. The fourth, between the syndicate manager and the sales company, provided for loans by the syndicate to the sales company for the purchase of the refined products, and the form of the notes to be given, which were of the same general tenor as those of the refining company, and which provided for the payment of interest at 6 per cent. per annum, payable monthly. It also provided for the payment of all expens-

es and disbursements of the syndicate manager, including costs and counsel fees and for the manager's services. It further provided that the syndicate manager might at any time require the sales company to assign to it all the company's accounts receivable for collection by the syndicate manager, the proceeds to be held for the payment of the notes issued thereunder. In case of default in any of the covenants of the agreement by the sales company, the syndicate manager might declare the principal of all the notes due and payable immediately. It also further provided that, any time before such notes were reduced to a judgment, the sales company, by paying the amount of the principal and interest, and interest on any overdue installments of interest and the expenses of the manager, might have the declaration that the entire principal of the notes with interest was due rescinded if a majority in amount of the notes issued and outstanding so directed in writing.

If such declaration was not annulled, or if no such declaration were made, the syndicate manager might proceed to enforce collection of any notes in default and the performance of any covenant of the agreement by suit at law or proceeding in equity, and collect any moneys due, and any amount so collected should be for the equal and ratable benefit of the owners of said notes.

It was also further provided that "all amounts collected by the Syndicate Manager shall be applied: first, in payment of costs and expenses, including the reasonable compensation of the Syndicate Manager, its agents, attorneys and counsel, and of all expenses, liabilities or advances made or incurred by the Syndicate Manager; second, to the payment of the whole amount then owing or unpaid upon the notes equally to the payment of principal and interest, with interest on overdue installments of interest at the rate of 6% per annum."

In August, 1925, an amendment, joined in by all parties to all the agreements, provided for the substitution of the appellant as the manager for the First National Bank of Boston, and also provided that in case of any surplus funds from collateral which the syndicate manager might hold from either the refining company or the sales company should be applied in payment of the notes of the other company.

In October, 1928, receivers were appointed by the District Court, one of whom has since resigned, and the several agreements were adopted by the receivers with the approval of the court.

At the time of the amendment in 1925 the limit agreed upon of $3,000,000 had been loaned by the syndicate, approximately half to each company. Interest was paid regularly on the notes until November 1, 1924. Between that date and the sales of the property of the refining company by the remaining receiver and the mortgagee in January, 1929, interest was paid at irregular intervals. In January, 1929, with the court's approval, all the property, raw materials, and finished product purchased with the funds loaned by the syndicate were sold by the syndicate manager, and, from the proceeds of the sale and from receivables collected, all the notes held by the syndicate and the sales company were paid and nearly all the notes of the refining company. The syndicate manager also paid from the proceeds, against the protest of the receiver, interest on the overdue installments of interest on all the notes, amounting on the notes of the refining company to $21,531.58, and on the notes of the sales company to $22,571.82, or a total of $44,103.40.

Whereupon the receiver petitioned the District Court to order the syndicate manager to account for this amount as having been disbursed from funds belonging to the receiver. The court below found that the syndicate manager had no right to pay interest on the overdue installments of interest, and directed it to account for the above amount to the receiver, and to a claimant, John W. Harding, trustee, as their rights might be determined by the court. Later the sum paid for interest on overdue interest was by agreement of the parties without prejudice to the rights of the syndicate applied on account of the principal of the notes of the refining company which have now all been paid. It is also agreed that there are still funds in the hands of the syndicate manager sufficient to pay the amount due, if any, as interest on overdue installments of interest.

As there never was any declaration by the syndicate manager of default in the payment of the notes, either of the refining company or the sales company, or of any of the covenants of either agreement, or any actions at law or in equity begun for the collection of any of such notes, or for the enforcement of any of the covenants of either agreement, and as according to the law of Massachusetts interest on interest overdue is treated as compound interest and cannot be collected unless expressly provided for, the receiver protests against the allowance of the use of any of the funds in the hands of the syndicate manager for the payment of inter-

est on overdue installments of interest on any of the notes held by the syndicate.

Counsel for the syndicate manager, however, contends that the payment of simple interest on overdue interest payable at stated intervals is not compound interest, nor is it governed by local law, that the weight of authority in the other states supports such payments, and, in any event, a reasonable construction of the agreements indicates that it was the intent of the parties to this arrangement that such payments were to be made.

■ Where the line is to be drawn in every case, involving overdue interest payments due at definite periods, as between the application of local law and general commercial law is not always clear. We are of the opinion, however, that the allowance of interest on overdue interest is a matter of general commercial law, and, if the law were well settled, the fact that these agreements were between local parties and were to be performed in Massachusetts would not necessarily control.

But here we are met with the difficulty that there appears to be no unanimity of views as to the rule in other jurisdictions. In fact, the authorities appear to be fairly well balanced, though those in favor of allowing such interest may be based on the soundest reason. A collection of the authorities pro and con may be found in 27 A. L. R. 84. We do not find that the federal courts have adopted any consistent rule as to the payment of interest on interest, except in the case of coupons. Hollingsworth v. Detroit, Fed. Cas. No. 6613, 3 McLean, 472; Sears v. Greater New York Devel. Co. (D. C.) 19 F.(2d) 654. The appellee, however, finds some support in United States Mortg. Co. v. Sperry, 138 U. S. 313, 342, 11 S. Ct. 321, 34 L. Ed. 969; Cairo v. Zane, 149 U. S. 122, 13 S. Ct. 803, 37 L. Ed. 673, and in Cherokee Nation v. United States, 270 U. S. 476, 490, 46 S. Ct. 428, 70 L. Ed. 694. The statement referred to in the latter case, however, was merely dictum, and the appellant urges that the decision in the other cases cited were affected, if not controlled, by local statutes. If there were nothing in the agreements indicating a contrary intent by the parties, we think in this case we should adopt the view that, where the general rule is not well settled or is in doubt, the local rule should govern. Brown v. Grand Rapids Furn. Co. et al. (C. C. A.) 58 F. 286, 293, 22 L. R. A. 817; Community Bldg. Co. v. Md. Casualty Co. (C. C. A.) 8 F.(2d) 678, 680.

■ It is urged by counsel for the syndicate manager, however, that there are provisions in the agreements which should control in this case as indicating the intent of the parties, and there is, we think, force in his contentions.

While there is no provision in the agreement between the syndicate manager and the refining company or between the refining company and the sales company with reference to the payment of interest on overdue installments of interest, we think that the agreements are so interrelated, and, having one end in view, viz. the supplying of the necessary funds to the refining company, that they must be construed as one, and that it must have been within the contemplation of the parties that all notes, whether of the refining company or the sales company, should be treated alike as to payment of interest.

In case of default in the agreements of the sales company and a declaration by the syndicate manager that the principal of all the notes is immediately due and payable, before the declaration can be annulled, all interest due and interest on overdue installments of interest must be paid as well as any expense of the manager. This provision supports in some degree the contention of the appellant that the parties understood that interest on overdue interest should be paid whenever there was a default.

Instead of being a penalty for the default, as the appellee contends, it is reasonably susceptible of the construction that it is merely an ordinary provision that the company must pay in full all its obligations up to that time as the parties had agreed upon them, before it should be restored to good standing under its agreement.

This is further confirmed, we think, by the most reasonable construction of the provision following the authority to sue on the notes, and bring an action at law or in equity for the enforcement of any covenants in the agreements and collect any moneys due under the agreement, which we have quoted above. The appellee, however, contends, and with some plausibility, that this provision as to distribution of "all amounts collected," by reason of it immediately following the provision for authorizing suits on the notes, refers only to the collection by such suits, and, as the moneys now in the hands of the manager were not collected by suit, that there is no provision for applying it on overdue installments of interest, and therefore it can only be applied under the law as laid down by the courts of Massachusetts. No good reason is given for this limited application except the order in which the provisions occur.

This construction, however, appears to result in this absurdity: That, if under the law of Massachusetts in a suit on the notes no interest on overdue interest could be collected, Ferry v. Ferry, 2 Cush. (Mass.) 92, 98; Lewin v. Folsom, 171 Mass. 188, 192, 50 N. E. 523; Ellis v. Sullivan, 241 Mass. 60, 64, 134 N. E. 695, and no judgment could be obtained for interest on overdue interest, yet the manager is directed to pay from the sums so collected not only the principal and interest, but interest on unpaid installments of interest. Amounts collected on a judgment recovered on a note or notes can only be applied in settlement of the notes on which suit is brought and to the amount of the judgment.

We are of the opinion, therefore, that a broader scope must have been intended by this provision. The agreement with the sales company also provides that at any time the manager may require an assignment of all accounts receivable held by the sales company, and may collect such receivables. The only reasonable construction of the provision above quoted as to the application of "all amounts collected" by the manager is, we think, that it includes all amounts whether collected by suit or otherwise; and there now being in the hands of the manager a surplus of collateral or funds above the amount necessary to pay the notes of the sales company with interest and interest on overdue installments of interest, the balance must be distributed as therein provided, and not only as to the notes of the sales company, but under the supplementary and amendatory agreement of August, 1925, and, under all the circumstances under which the agreements were entered into, having in mind the single aim of them all, these funds in the hands of the syndicate manager should in equity be applied in the same manner to the notes of the refining company.

There would seem to be, in the relations between the several parties to these agreements, no good reason, which can be assigned, why in one situation the overdue interest of the sales company's notes should draw interest, and the overdue interest on the refining company's notes in the same situation should not.

There is nothing inconsistent with the purpose of these agreements in this construction. On the contrary, it is the one most consonant with the general purpose. Banks were loaning their funds. In order to realize a profit, these funds must be loaned at interest. If interest is not paid when due, a bank is deprived of the use of the amount of money represented by that interest. It is quite consistent with general banking practice that the banks forming this syndicate, if they were to finance a concern already involved, and especially one which, even with the generous assistance afforded, could not survive, should take every precaution to protect themselves against loss, and should provide for interest to be paid at frequent intervals on all installments of interest remaining unpaid. We think all the parties to these agreements must have so understood it. That this provision is found only in the agreement with the sales company may be accounted for by the fact that, under the plan adopted, the sales company was the medium through which all funds collected would pass in the ordinary course of events outlined in the agreements.

The decree of the District Court is reversed, and the case remanded to that court for further proceedings in accordance with this opinion, with costs in this court to the appellant.

ANDERSON, Circuit Judge (dissenting).

I think the question here must be determined under the rule of the Massachusetts courts; that, under that general rule, interest on interest must be disallowed, as in the nature of compound interest. I see no adequate reason for construing the agreements so as to take it out of this general rule.