## AMERICAN BRAKE SHOE & FOUNDRY CO. v. INTERBOROUGH RAPID TRANSIT CO.

District Court, S. D. New York.
June 24, 1935.

In Equity. Suit by the American Brake Shoe & Foundry Company against the Interborough Rapid Transit Company. On petition of Bankers Trust Company, trustee, for instructions.

See, also, 11 F. Supp. 26.

Davies, Auerbach & Cornell, of New York City (Harold C. McCollum, of New York City, of counsel), for Central Hanover Bank & Trust Co.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Edwin S. S. Sunderland and Chester F. Leonard, both of New York City, of counsel), for committee for Interborough first and refunding mortgage bonds.

White & Case, of New York City (Jesse E. Waid, of New York City, of counsel), for Bankers Trust Co.

MACK, Circuit Judge.

Bankers Trust Company is trustee under an indenture by Interborough, pursuant to which it now has nearly $55,-000,000 of the Interborough 5 per cent. bonds as collateral securities for nearly $32,000,000 of its 7 per cent. coupon notes. These notes, dated September 1, 1922, matured September 1, 1932, shortly after the appointment of the receiver for the Interborough. No part of the principal notes or of the September 1, 1932, interest coupons was paid at that time. Some earlier coupons are also outstanding. While they would have been paid, if presented at their respective maturities, it was conceded on argument that the moneys then available therefor at the place of payment had subsequently been withdrawn. The exact date of withdrawal has not been given, but for the purposes of this decision I shall proceed on the assumption that, because of the withdrawal, no proper tender was ever made, and that, therefore, if any interest after maturity was payable on such prior interest coupons, it remains payable from the date of the maturity of each of such coupons.

The Interborough covenanted in the trust indenture that both the principal notes and the interest coupons should bear interest at the rate of 7 per cent. annually after their respective maturities. Each principal note provided on its face for interest at that rate, payable semiannually, until payment of the note; the interest coupons, however, contained no similar provision as to any interest after maturity.

The obligations sharing in the collateral may, therefore, be divided into four classes: First, the principal notes that matured September 1, 1932; second, the interest coupons that matured on the same date and, whether attached to or detached from the principal notes, were then held by the owners of the respective principal notes; third, earlier interest coupons similarly held; fourth, detached interest coupons, whether they matured September 1, 1932, or earlier, transferred before their maturity to holders in due course.

The trustee now asks the instructions of the court as to the proper distribution of moneys paid and that may be paid to it by the Interborough receiver, under court orders, as the semiannual interest on the 5 per cent. bonds held as collateral. The principal issue is whether New York nonstatutory law or general commercial law governs the situation. Inasmuch as the provisions of the principal notes and the covenant in the indenture, both in so far as it affects either the principal notes or the interest coupons in the fourth of the above cases, are valid under either law, these two classes bear interest after their respective maturities at the rate of 7 per cent. annually.

But, under New York law, the indenture provision for interest after maturity on the other two classes of interest coupons is unenforceable, as violative of the public policy of that state. Williamsburgh Savings Bank v. Town of

Solon, 136 N. Y. 465, 32 N. E. 1058 (1893); Bailey v. County of Buchanan, 115 N. Y. 297, 22 N. E. 155, 6 L. R. A. 562 (1889); Young v. Hill, 67 N. Y. 162, 23 Am. Rep. 99 (1876). The question therefore as to them is whether New York law is applicable.

Despite my personal views that state law ought to control contractual obligations made and payable in the state, especially in a case in the federal court dependent for jurisdiction on diversity of citizenship, the law is well established since Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865 (1842), especially as to commercial paper, that a federal court in the absence of a controlling state statute applies what it may find to be the general commercial law in this country, irrespective of the decisions of the state court. Nor does the fact that the state decisions are based on what they deem to be the public policy or fixed public usage of the state change the situation. Black & White T. & T. Co. v. Brown & Yellow T. & T. Co., 276 U. S. 518, 48 S. Ct. 404, 72 L. Ed. 681, 57 A. L. R. 426 (1928). Indeed the very concept of a general commercial law is inconsistent with the view that there may be, within its field, any fixed local usage or public policy which must control the federal courts. Spinks v. Mutual Reserve Fund Life Ass'n, 137 F. 169 (C. C. E. D. Ky., 1905).

Although the New York rule is not binding on this court, it would nevertheless be followed if there were any real conflict in the federal decisions, because, as happily phrased by Mr. Justice Cardozo in Mutual Life Ins. Co. v. Johnson, 293 U. S. 335, 55 S. Ct. 154, 156, 79 L. Ed. 398 (1934), "the summum jus of power, whatever it may be, will be subordinated at times to a benign and prudent comity. At least in cases of uncertainty we steer away from a collision between courts of state and nation when harmony can be attained without the sacrifice of ends of national importance." On the question here to be decided, however, the courts of the nation have spoken in no uncertain terms; the issue, far from being "balanced with doubt," has been resolved, with but a single exception, in a manner contrary to the New York decisions. Gelpcke v. City of Dubuque, 1 Wall. 175, 17 L. Ed. 520 (1863); Aurora City v. West, 7 Wall. 82, 19 L. Ed. 42 (1868);

Town of Genoa v. Woodruff, 92 U. S. 502, 23 L. Ed. 586 (1875); Cromwell v. County of Sac, 96 U. S. 51, 24 L. Ed. 681 (1877); Amy v. City of Dubuque, 98 U. S. 470, 473, 25 L. Ed. 228 (1878); Edwards v. Bates County, 163 U. S. 269, 16 S. Ct. 967, 41 L. Ed. 155 (1896); Sears v. Greater New York Development Co., 51 F.(2d) 46 (C. C. A. 1st, 1931), cert. den. 284 U. S. 668, 52 S. Ct. 42, 76 L. Ed. 565; Roswell Drainage Dist. v. Parker, 53 F.(2d) 793 (C. C. A. 10th, 1931); cf. American Trust Co. v. Proctor, 42 F.(2d) 384 (C. C. A. 1st, 1930), cert. den. 282 U. S. 867, 51 S. Ct. 74, 75 L. Ed. 766. Furthermore, the precedents in this court, the New York Municipal Railway Case, the B. R. T. Receivership, and the New York Railways Receivership, allowing interest after maturity on interest coupons, should be followed, unless clearly erroneous. Columbus, Sandusky & Hocking R. Co. Appeals, 109 F. 177 (C. C. A. 6th, 1901), cert. den. Metropolitan Trust Co. v. Mercantile Trust Co., 183 U. S. 700, 22 S. Ct. 936, 46 L. Ed. 396, which is not distinguishable from the other federal cases, alone supports the New York rule.

Cromwell v. County of Sac, supra, and Sears v. Greater New York Development Co., supra, among other cases, dispose adversely of the contention that after the maturity of the principal, undetached coupons lose their interest-bearing status because they are no longer negotiable instruments.

All of the note and coupon holders, then, have a valid claim in personam against the Interborough for interest from and after their respective maturities, on the principal notes and on all of the interest coupons. Of course, on a claim in rem against Interborough assets in receivership, all interest ceased on August 26, 1932. The exact question before me, however, is not that of claims against Interborough in personam or against its estate in receivership; the question is, what are the relative rights of the several classes of note and coupon holders in and to the collateral securities, the income thereon, and eventually the proceeds thereof? The answer thereto depends upon whether these relative rights are governed by New York law, even though that law is not controlling in respect to the claims against the Interborough. Under New York law, contrary to the law of some

states, the security is merely incidental to the debt and as such partakes in a sense of its negotiable character. Thus, a holder in due course of a note secured by a mortgage, in a foreclosure of the mortgage, is free from those defenses of the mortgagor that could not be raised against him in an action at law on the negotiable note. Gould v. Marsh, 1 Hun (N. Y.) 566; Atlantic Trust Co. v. Crystal Water Co., 72 App. Div. 539, 76 N. Y. S. 647 (1902); Weaver Hardware Co. v. Solomovitz, 98 Misc. 413, 163 N. Y. S. 121 (1917). The United States Supreme Court decisions are to the same effect. Carpenter v. Longan, 16 Wall. 271, 21 L. Ed. 313 (1872); Kenicott v. Wayne County, 16 Wall. 452, 21 L. Ed. 319 (1872). See Chicago Ry.-Equipment Co. v. Merchants' Bank, 136 U. S. 268, 283, 10 S. Ct. 999, 34 L. Ed. 349 (1890). I need not, therefore, consider whether, in reaching this conclusion, the federal decisions purport to apply general commercial law or the law of a particular state. The relative rights of the holders of the notes and coupons in and to the collateral will, therefore, be dependent upon their rights in personam against Interborough under general commercial law as hereinabove determined.

While, however, the allowance of interest after maturity on a negotiable note or coupon is based upon principles of general commercial law, the rate of interest so to be paid is held by the United States Supreme Court to be determined by state law. Cromwell v. County of Sac, supra. I am, therefore, confronted in this case with a peculiar situation. So far as the principal notes are concerned, there is no difficulty. Both on their face and by the covenant in the indenture, enforceable as to them both in the state and in the federal courts, the rate is fixed at 7 per cent. The coupons, however, contain no similar provision on their face, and, even if they did, such a provision, like the provision in the indenture, would be unenforceable in the state courts as to all but the fourth of the above classes. I have held, however, in this case that in this court, the provision for payment of interest after maturity on all of the coupons is enforceable. What then is the applicable rate? Under the law of New York, it could in a sense be said to be nothing as to the second and third classes because, as to them, the New York courts

would allow nothing; on the other hand, it might be urged to be the statutory legal rate of 6 per cent., applicable to contractual obligations in the absence of a different agreed rate which the parties by statute are permitted to fix within limits. I believe, however, that neither of these views is sound and that the rate must be determined to be 7 per cent. The meaning of the federal decisions, applying state law as to the rate, is that the statutory rate if any applies, and if by statute parties are allowed to fix a rate different from that applicable in the absence of agreement, then the agreed rate controls. If this were not so, it would lead to a result, both absurd on its face and contrary to the above-cited precedents in this court, either that the determination in favor of interest after maturity would be completely frustrated, or that, if the agreed rate were 4 per cent. or 5 per cent., the federal courts would allow 6 per cent., and that, too, although the state courts allow nothing. And even though the agreement for interest, regardless of the rate, is unenforceable in the state courts, nevertheless when, as here, it is enforceable in this Court, then the rate therein specified must be deemed to be the applicable state rate.

I hold therefore that the holder of each note or coupon is entitled to share in each distribution of collateral, its income and its proceeds, on the basis of the face amount with the interest thereon from its maturity at the rate of 7 per cent. While the provisions of the indenture that, in case of a deficiency on the sale of the collateral, the notes and coupons shall share pro rata without priority of either principal or interest over the other or of any installment of interest over any other, do not literally cover this situation, the relative rights of the parties should be determined in analogy thereto. Therefore, the contention of some holders that coupons are to be paid off ahead of notes cannot be upheld. Furthermore, despite the greater intricacy of calculations, the pro rata participation of the earlier coupons in each distribution must include the simple interest thereon from their respective maturities and not merely from September 1, 1932, and on the other hand, the earlier coupons can be given no priority either as to the post maturity interest thereon down to September 1, 1932, or as to their

face amount with or without such post maturity interest.

One question remains. How shall the moneys at each distribution be credited as between post maturity interest on the notes and on the coupons on the one hand and their face amount on the other hand? Again, I can find no basis for distinction in this respect as between attached and detached or as between the earlier and the September 1, 1932, coupons. As between all of them and Interborough, the total amount eventually to be paid may be involved. This is so because, if·the money were to be credited first on account of the face amounts, interest would cease on the sums so credited, whereas, if the money were applied first to the payment of the post maturity interest, interest thereafter would continue on the entire unpaid face of the notes and of the coupons.

I am not here concerned with directions that should be given when interest is paid by the receiver on the 5 per cent. bonds held as collateral. Payments have been made without directions as to the allocation thereof; payments will be made hereafter. I do not mean to intimate any opinion as to the propriety of the court giving such directions on the application and in the interest of the receiver or of the other 5 per cent. bondholders. The question before me is, How these secured creditors may require their trustee to allocate them? Ordinarily the creditor could and would apply partial overdue payments first to the interest after maturity so as not to decrease the interest-bearing part of the total amount due. I can find no substantial reason against this method of distribution because of the receivership or the claims of Manhattan interests and other creditors or otherwise. The collateral was given to secure these noteholders; they should be,enabled to accomplish this end, as against the debtor and all claiming under it, in the way that would best serve their interest, so long as that method does not run counter to the terms of the indenture or to fundamental legal principles.

It follows, therefore, that the distribution made January 3d as of January 1, 1933, should have been prorated on the basis of the face amount of each principal note, with interest thereon from September 1, 1932, at the annual rate of 7 per cent., of each September 1, 1932, coupon, with interest thereon similarly calculated, and of each earlier coupon, with interest thereon at the same rate but from the date of the coupon's maturity.instead of from September 1, 1932. The amount so apportioned to each note and to each coupon should 'then have been applied to the post maturity interest thereon and the balance to the face amount of such note of coupon.

This pro rata basis ·of distribution would have been $1,023.33, the face amount of each $1,000 note plus interest thereon from September 1, 1932, to January 1, 1933; $36.40, the face amount of each September 1, 1932; $35 interest coupon plus similar interest thereon; $37.-04, the face amount of each March 1, 1932; $35 interest coupon with 10 months' interest thereon; and amounts similarly calculated for earlier coupons. The moneys apportioned on this basis for each note and for each coupon, would be applicable first, to the payment of the entire post maturity interest on such note or coupon, and the balance, on account of the face amount thereof. At each subsequent six months'.distribution, a similar calculation, but on the basis of the reduced face of the notes and coupons, must be made.

The payments heretofore made on a basis other than that herein directed to be used will be adjusted in connection with the distribution of the moneys that will be paid on the collateral on or as of January 1,. 1936. As all steps have been taken for the distribution on the old basis of the moneys to be received from the collateral on or as of July 1, 1935, this distribution may be carried out, but it will be subject to a similar adjustment as of January 1,'1936. As transfers of notes and coupons since September 1, 1932, were after maturity, the holders thereof cannot object to any such adjustment.