## TOLL *vs.* HILLER.

Where the solicitor of the complainant refused to receive from the defendant a partial payment on the complainant's mortgage, as a payment to stop interest, but consented to receive it as a deposit, with the understanding, that if the complainant would take the same as a payment and allow interest, it should be endorsed on the mortgage; and the complainant refused to receive the money unless the whole debt was paid; but subsequently the solicitor handed over to the complainant the money, with the understanding that the latter was not to allow interest thereon, until the residue was paid, of which the defendant was informed, and the defendant acquiesced in such arrangement; and the complainant, on receiving the money, used it as his own; *Held*, that the defendant was equitably entitled to have the money applied as a payment, on his mortgage, as of the time it was received and used by the complainant.

Compound interest cannot be recovered, unless there is a special agreement to pay interest upon the interest of the principal debt, after such latter interest has become due and payable.

Where property was sold, upon a decree of foreclosure, at a price greatly below its value, and was bid in by the complainant's solicitor, in his own name, and the defendant, instead of applying to the court for a re-sale, entered into an arrangement with the purchaser to redeem the property, upon payment of the amount due upon the mortgage, with interest and costs, within a specified time, and to have possession of the mortgaged premises in the meantime; *Held*, that it was too late for the defendant, after he had broken his agreement to redeem the premises, to apply to the court to set aside the sale, and for a re-sale of the premises.

*Held further*, that, as the defendant was in possession of the premises under such agreement made subsequent to the sale, and not as a defendant in the foreclosure suit, who was bound by the decree to relinquish the possession of the premises to the purchaser, such purchaser was not entitled to a writ of assistance to put him into possession of the premises; but that he must be left to his remedy at law, by ejectment, or otherwise.

THE facts of this case and the grounds upon which the application of the defendant, to set aside the sale in this case was denied, and the application to set aside the writ of assistance against him was granted, are stated in the opinion of the chancellor.

*J. Rhoades & S. Stevens,* for the complainant, and for J. Sacia, the purchaser.

*A. Taber,* for the defendant.

Toll *v.* Hiller.

THE CHANCELLOR. This case comes before me upon an order to show cause, why the master's report of the amount due upon the mortgage in this cause, the decree of sale, and the sale and report thereof, and all subsequent proceedings, should not be set aside ; and also why the order of the court, allowing the writ of assistance to turn the defendant out of possession of the mortgaged premises, should not be set aside. The bill was filed to foreclose a mortgage of $3000, dated the 18th of April, 1839, payable in six yearly payments, with interest annually. At the time the bill was filed, in May, 1840, one year's interest and the first instalment of the principal, amounting together to the sum of $721, had become due. On the 8th of June, 1840, the defendant applied to Sacia, the complainant's solicitor, and offered to pay $475 on the mortgage ; but as the solicitor had been instructed not to receive a partial payment and stop the interest on it, as the complainant wished to receive the whole payment due, at once, he refused to receive it as a payment to stop interest, but consented to receive it as a deposit, and agreed that if Toll would take the same as payment and allow interest it should be endorsed. Sacia accordingly received the money and gave his own receipt therefor, to be accounted for. He saw his client the same day, who refused to receive the money unless the whole amount then due was paid. On the 20th of June, Sacia handed over the $475 to his client, with an understanding that the latter was not to allow interest thereon until the residue was paid. Previous to the commencement of the suit, and before any thing had become due, the complainant had also borrowed $30 of the defendant, with an understanding between them that it was to be offset against so much of the first payment. Shortly after the $475 was paid over to the complainant, the defendant was informed of the fact, and that interest was not to be allowed or deducted on account of that sum until the residue was paid. Hiller acquiesced, and promised to pay up the whole then due in a short time. I infer from the affidavits that the complainant actually used the $475 received on the 20th of June, 1840. If so, he ought in equity, to allow interest on it from that time ; as an agreement to wait longer for the residue, on condition of

having the use of this sum without interest in the meantime, would be usurious. And if application had been made in season, I think the court should have allowed this $475, to stop the interest on so much thereof as was applicable to the principal of the debt, beyond the amount of interest which was due and payable on the 20th of June, 1840, when the complainant received and used the money; although the latter merely gave to his solicitor an accountable receipt for the amount, at the time it was received. No further payment was made until after the second instalment, and another year's interest, had become due. Hiller then made another payment to the solicitor of $550, including $5 which was counterfeit, and took a receipt for the amount from Sacia, to be accounted for, without interest. This receipt is dated April 2, 1841, and the money was shortly afterwards handed to the complainant. At the time of this payment by Hiller he also paid the solicitor $38, for the costs which had then accrued in the foreclosure suit, and promised to pay up what was then due and payable in a few days; the balance then due and unpaid, being between $350 and $400, exclusive of the $30, and interest thereon, loaned to the complainant before the first payment fell due. No further payments were made, as agreed upon, however; and the complainant's solicitor, on the 12th of July, 1841, proceeded upon the order of reference before the master, to obtain a report of the amount due on the mortgage; the bill having been taken as confessed. At that time, Sacia, the solicitor, endorsed the two sums of $475 and $550 upon the bond and mortgage, as of the 2d of April, 1841, in full of the first payment and the interest thereon, and in part payment of the second instalment; and leaving a balance on the second instalment, according to such endorsement, of about $395. The master, however, by adding the interest to the principal at the end of the first year, and computing the interest on the whole for the second year, made the balance due the 1st of April, 1840, $409,70; making the amount actually due and payable on the 12th of July, the date of his report, $417,89. The amount of the $30 loaned to the complainant was not deducted, as the solicitor had no statement

thereof. And the master also reported that the premises were so situated that they could not be sold in parcels without injury to the interests of the parties. The correctness of the master's report is now sought to be impeached in this respect. But I am not satisfied, even upon the facts as they are now made to appear, that the report is wrong in this particular. Clearly the master's decision was right upon the testimony before him, and it is now too late to inquire into its correctness.

The amount which was actually due and payable at the time of the master's report, if the $30 and interest, together with the $475, are applied on the 20th of June, 1840, and the $550 on the 2d of April, 1841, would be about $60 less than the amount reported due by the master. Still, there would be due upon the decree, after the two payments, of $170, on the 19th of October, 1841, and $200 on the 30th of the same month, including a balance of $18,60 for the taxed costs, beyond the $38 paid in April, 1841, towards costs, about $21, including the $5 counterfeit bill received in the payment of April, 1841 : in addition to the master's fees and expenses of advertising the property for sale twice, after allowing the $30 and interest, and the two payments of June, 1840, and of April, 1841, with interest thereon. The difference between this statement and the statement of Sacia in schedule A., arises from the fact, that in his schedule, interest is cast upon the $210 of annual interest, from the time it became due until the time it was received, and from a mistake of $10, in calling the balance of the solicitor's costs $28,30, and some other slight differences in casting.

It may be proper to say, however, that as the interest was, by the condition of the bond and mortgage, to be paid annually, it would be perfectly equitable to receive interest on such interest from the time it was payable ; although, for special reasons of policy, courts will not allow interest upon interest, unless there is a special agreement to pay interest thereon after the original interest has become due and payable. As there was a clear balance due upon the decree, after making all proper allowances, it was perfectly regular to proceed and sell the property at the time it was sold. And it was the result of the defendant's own

negligence in not making the payments, after the solicitor had improperly indulged him, at the expense of his own client, from time to time for nearly two years, that the suit was not finally settled without proceeding to a sale. There is no pretence, therefore, for opening the sale, or any of the previous proceedings, on the ground of irregularity, or of any undue advantage taken of the defendant's situation, either by the complainant or by his solicitor.

The fact, however, that the property was sold so much below its value, and leaving the defendant personally liable for the several instalments which had not yet become due upon the bond and mortgage, might itself have been sufficient to have justified the opening of the sale upon the terms of paying what was actually due, with interest and costs, if the defendant had applied immediately to the court, instead of arranging the matter with the purchaser. But the arrangement was perfectly fair and honorable on the part of the solicitor, and if the defendant had complied with the agreement on his part, according to its spirit and intent, the land would undoubtedly have been reconveyed to him; and the solicitor would have been relieved from the necessity of raising the money to settle with his own client, the complainant in the suit.

The question whether the solicitor, after the defendant had refused to do him justice, and had driven him to the expense of an ejectment suit, refused reasonable terms of compromise, is one which will properly be considered upon the bill which Hiller has filed against Sacia to stay the proceedings in the ejectment suit; but it does not legitimately arise here. The sale being regular, and the defendant having elected to rely upon the agreement with the purchaser to re-convey the property upon reasonable terms, the summary power of this court over the subject, by a motion in the original suit, appears to be at an end; especially as the agreement was entered into by the defendant with a full knowledge of all the facts upon which he now asks for relief on this application.

The fact that such an agreement was made, between the defendant and the purchaser under the decree, subsequent to the

master's sale, and that the defendant is now in possession under that agreement, and not in his character of a party, in this suit, who is bound by the decree to give up the possession to the purchaser, upon pain of contempt, furnished a good ground for setting aside the writ of assistance as irregular and unauthorized; the power of the court to enforce the delivery of possession by a summary proceeding being superseded by this voluntary arrangement between the purchaser at the sale and the party who was then in possession.

The order to show cause, except so far as relates to the setting aside the writ of possession for irregularity, must therefore be discharged with twenty dollars costs; which is a reasonable allowance for the costs of Sacia in opposing this application, after making a proper deduction, from his whole costs, for so much of the costs of the defendant as relates to the writ of assistance. The decision upon this application is to be without prejudice to the rights of either party, in the suits which are still pending between them and undecided.