In re WISCONSIN CENT. RY. CO.
No. 17104.

District Court, D. Minnesota,
Fourth Division.
Sept. 14, 1945.

George W. Morgan, of St. Paul, Minn., and M'Cready Sykes, of New York City

(Morgan, Chase, Headley & Hoshour, of St. Paul, Minn., and Stewart & Shearer, of New York City, of counsel), for Trustees under the First General Mortgage.

W. Lloyd Kitchel, of New York City (Cadwalader, Wickersham & Taft, of New York City, of counsel), for Protective Committee for First General Mortgage bonds.

Olin, Clark & Murphy, of New York City, and Stinchfield, Mackall, Crounse & Moore, of Minneapolis, Minn., for Empire Trust Co. and Henry A. Bultman, Trustees of the Refunding Mortgage.

Snyder, Gale, Hoke, Richards & Janes, of Minneapolis, Minn., and Cravath, Swaine & Moore, of New York City, for Chemical Bank & Trust Co. and John A. W. Richardson, Jr., as Trustees under the Superior and Duluth Division and Terminal First Mortgage.

James L. Hetland and E. E. Boyner, both of Minneapolis, Minn., for Minneapolis, St. Paul & Sault Ste. Marie R. Co.

James E. Dorsey and Donald West, and Dorsey, Colman, Barker, Scott & Barber, all of Minneapolis, Minn., for Trustees of the debtor company.

NORDBYE, District Judge.

There have been presented the following matters for determination arising out of the objections to claims filed in the above proceeding:

1. Whether interest may be allowed upon the overdue interest coupons attached to the debtor's First General Mortgage bonds and the Superior and Duluth Division and Terminal First Mortgage bonds which are now outstanding in the hands of the public.

2. Whether and to what extent the Superior and Duluth Division and Terminal First Mortgage bonds of the debtor are entitled to interest after May 1, 1936, the due date of said bonds, at a rate greater than four per cent.

3. Whether the $1,047,000 principal amount of First General Mortgage bonds now held by the Trustees of said mortgage, and the $1,000 principal amount of such bonds held by the debtor, are entitled to participate in the assets of the debtor.

These matters will be considered in the order indicated above.

I. The respective mortgages which secure the bonds referred to ex-

pressly provide that interest shall be paid upon defaulted coupons. The contracts involved herein were made and are performable in New York. The parties recognize, therefore, that the law as enunciated by the courts of that State on this question must govern. It is conceded that, under the New York law, compound interest may only be collected, generally speaking, upon the basis of a promise made after the interest upon the principal has accrued. State of Connecticut v. Jackson, 1814, 1 Johns.Ch. 13, 7 Am.Dec. 471; Young v. Hill, 67 N.Y. 162, 23 Am.Rep. 99; Newburger-Morris Co. v. Talcott, 1916, 219 N.Y. 505, 114 N.E. 846. An agreement, therefore, to pay compound interest made when the debt is created is void and unenforceable even if the promise to pay is an expressed one. See, Young v. Hill, supra; State of Connecticut v. Jackson, supra; Newburger-Morris Co. v. Talcott, supra. Cf. Quackenbush v. Leonard, 1841, 9 Paige 334.

▇ The bondholders herein, however, are not seeking compound interest, and earnestly contend that the New York courts do not deny the enforcement of promises to pay interest on interest. Interest on interest is the interest paid upon interest due upon the original principal sum. Compound interest is the interest paid when the unpaid interest due upon the principal is added to the principal and the resulting sum is the basis for the next payment upon which the ensuing interest is computed. The latter method of figuring interest results in interest on interest on interest ad infinitum. See, 33 Corpus Juris, Interest, § 2, p. 179. But while this distinction might be made as between compound interest and interest on interest, the situation now before the Court does not present a factual basis for contending that there is a great difference in the burden which rests on the debtor as between interest on interest and compound interest. Computations indicate that, if the coupons on a $1,000 bond which pays four per cent interest were in default since 1940, the amount of interest now due the bondholder, if compound interest were paid upon the defaulted bond, would be only $1.83 greater in amount than if only interest on interest were paid during that time. The burden, therefore, which rests upon the Debtor is one of quantity rather than of character.

An analysis of the New York cases which have dealt with the policy of that State with reference to the right of a creditor to collect interest on interest becomes necessary. At the outset, it may be recognized that there is some apparent uncertainty in the law of that State on this question. The courts of that State have used two terms interchangeably—"interest on interest" and "compound interest"—without expressly distinguishing between their meaning and the different factual situations to which they apply. The confusion is somewhat accentuated because the Federal courts which have been confronted with the task of construing the effect of these State decisions are in conflict. Compare American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C.N.Y. 1935, 11 F.Supp. 418, and In re Columbus S. & H. R. Co., 6 Cir., 1901, 109 F. 177, with American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C.N. Y.1939, 26 F.Supp. 954, and Transbel Investment Co. v. Roth, D.C.N.Y.1940, 36 F.Supp. 396.

▇ The two New York decisions which are most frequently referred to in considering this problem are Young v. Hill, supra, and Williamsburgh Savings Bank v. Town of Solon, 1893, 136 N.Y. 465, 32 N.E. 1058, 1062. A careful reading of the latter case seems to require the conclusion that interest on interest cases are governed by the same rules which govern compound interest cases. In the Williamsburgh case, as in the instant situation, the bondholders contended that they were entitled to interest upon the overdue interest coupons attached to the bonds and still in the hands of the bondholders. No doubt exists as to the fact that that case was a true interest on interest case. The court refused to grant interest on the coupons, holding that such interest would be "compound interest, which we have held not to be recoverable, except upon some new and independent agreement, made upon sufficient consideration. Young v. Hill * * *." In other words, the New York Court of Appeals held that interest on the coupons was just as much compound interest as was the interest in Young v. Hill, a true compound interest case, and that the compound interest rule applied in Young v. Hill must be applied to the interest on interest situation unless certain exceptions, not present there, or here, existed. The

court expressly characterized the interest on the coupons as "compound interest * * * not * * * recoverable."

Moreover, an analysis of the fact situations in other New York cases indicates that no attempt is made to distinguish between interest on interest and compound interest. Both types are referred to without discrimination in the same opinions and sometimes in the same paragraph. They tend to support the rule announced in the Williamsburgh case. For instance, in Toll v. Hiller, 1844, 11 Paige 228, a true interest on interest situation appears to have been involved. There, the court made this pronouncement of the "special reasons of policy" which would not countenance the collection of interest on interest, stating (11 Paige at page 231):

"It may be proper to say, however, that as the interest was, by the condition of the bond and mortgage, to be paid annually, it would be perfectly equitable to receive interest on interest from the time it was payable; although for special reason of policy, courts will not allow interest upon interest, unless there is a special agreement to pay interest thereon after the original interest has become due and payable."

In Ritter v. Phillips, 1873, 53 N.Y. 586, the debtor was paying an extra one per cent interest on the mortgage principal because he was unable to pay the mortgage when it had fallen due. He contended that this additional one per cent interest agreement was void because it was like paying interest on interest. The court said that the situation was "like an executed agreement to pay interest upon interest accrued. This is compound interest. An agreement to pay interest on interest thereafter to accrue, will not be enforced. But after it has been paid, it cannot be recovered back." The facts, the language, and the computations and result show clearly that the New York court did not require a true compound interest situation as a condition to the application of compound interest rules. In Boardman v. Lake Shore & M. S. R. Co., 1881, 84 N.Y. 157, 186–190, the plaintiff was seeking interest on dividends past due. The court referred to the interest as "compound interest" and applied the compound interest rules, denying recovery. Plaintiff there apparently did not seek interest on interest due on the dividends. The court only said he sought interest on the dividends. The facts show a true interest on interest situation to which the court applied the rule followed in compound interest cases. Reference may also be made to Buffalo Loan Trust & Safe Deposit Co. v. Median G. & L. Co., 1896, 12 App.Div. 199, 42 N.Y.S. 781, and Klein v. East River Elect. Co., 1901, 33 Misc. 596, 67 N.Y.S. 922. These cases were decided by the New York Supreme Court and were true interest on interest cases. The compound interest rule was applied, the court relying expressly upon Williamsburgh Savings Bank v. Town of Solon, supra. Although these cases were decided by the New York Supreme Court, they should not be ignored in ascertaining the rule in that State. West v. American Tel. & Tel. Co., 1940, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 123 A.L.R. 956. While State of Connecticut v. Jackson, supra, was a true compound interest case, it is significant to note that Chancellor Kent's instruction to the Master appeared to deny both interest on interest and compound interest to the creditor. See, also, Van Benschooten v. Lawson, 6 Johns. Ch. 313, 10 Am.Dec. 333.

The entire problem seems to have been stated quite succinctly by Judge Clancy in Transbel Investment Co. v. Roth, supra, 36 F.Supp. at page 399, when he held that the general rule denying collection of compound interest also pertained to the collection of interest on interest, and said:

"It appears though that the rule has been consistently stated as a public policy, that interest on interest has been described as compound interest because it differs from compound interest not in character or quality but only in quantity and that no case, in New York has whittled the policy down one jot or tittle. So we accept the policy as we find it. Erie R. Co. v. Tompkins, supra [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487]."

In view of these premises, therefore, it would seem that this Court is required to conclude that it must apply the New York compound interest rules to the instant interest on interest case. Both the Court of Appeals and the Supreme Court of New York have adopted and applied this rule. So, unless an exception or distinction can be established, none of the bondholders noted above seem entitled to interest on the overdue coupons.

■ The claimants here contend that the instant situation is distinguishable from the general situation which has come before most of the New York courts, because

an express promise was made here by the debtor. But, as noted, the promise was made when the contract was executed. True, the Williamsburgh case contains no express promise to pay interest on interest. But, on the other hand, it says nothing which indicates that a different rule would result if an express promise to pay interest on the coupons had been made before their due date. In fact, the opinion states the rule in a way which would seem to exclude such an inference. Only one exception is noted when the interest coupons are held by the owners of the bonds and that is the execution of a "new and independent agreement made upon sufficient consideration" after the interest has accrued. And the rule of Young v. Hill, upon which the Williamsburgh case is based, declares that a promise to pay compound interest made when the contract is executed, is not sufficient to justify recovery of compound interest. Moreover, the purpose of the rule denying compound interest and interest on interest seems to prevent the promise here from becoming operative. The rule exists because such interest "may serve as a temptation to negligence on the part of the creditor and a snare to the debtor, and prove in the end oppressive, and even ruinous." Young v. Hill, supra; Mowry v. Bishop, 1835, 5 Paige Ch., N.Y. 98. It is based upon public policy. Toll v. Hiller, supra. Certainly, an express promise made when the contract is made does not urge the negligent creditor to any greater efforts or invigorate the unwary debtor any more in interest on interest cases than it does in compound interest cases. Nor does it seem to cause the resulting burden to be any less oppressive. The mere fact that some debtor promises beforehand to pay interest on interest does not prevent negligence or unwariness. Apparently, the New York courts assumed that a promise after the interest has accrued would avoid the negligence of the creditor who does not collect promptly, in that the debt would already be due; that is, the unwary debtor would know when he made the promise that the debt was due and realize the predicament in which he finds himself. The promise made when the mortgage was executed would not of itself raise an obligation which would permit distinction to be made from the general rule that interest on coupons in the bondholders' hands cannot be collected except upon a promise made after the interest accrues.

The claimants also seek to distinguish the instant case from those to which the general rule is applied, or to create an exception to the general rule, upon the premise that the purpose of the rule is not applicable here in that the Debtor is a railroad company and is able to conduct its business affairs without the aid or benefit of this rule. However, if this argument is sound, such an exception could be applied to other corporations, large or small, or even to individuals. The difference between application and non-application of the rule would rest on a tenuous foundation; in fact, the problem would really resolve itself into a determination of the Debtor's ability as a businessman, rather than the determination of the ultimate facts of the case. Under some circumstances, courts would apply the rule, while under other circumstances the rule would be discarded. Prevalence of situations in which such a distinction or exception could be applied would cause the general rule to be stated and applied as a distinction or an exception, rather than a positive rule. Indeed, the general rule might be overruled by such exceptions and the oppressiveness of the interest would not be a factor in such a new rule, but would run counter to the teachings of the Williamsburgh and other cases. In effect, therefore, the Court would be holding that, under such a rule, large corporate concerns and those of evident business ability could be subjected to oppressive interest, but those who were not competent business persons or concerns, or who did not look after their affairs because of indifference or otherwise, could not be subjected to the interest. Moreover, the same exception or distinction could be made in compound interest cases. It would seem, therefore, that the mere fact that the Debtor may know when interest falls due does not seem sufficient, in absence of other facts, to remove the instant case from the general rule. It may be pointed out that the New York courts have never sought to make such an exception or distinction. On the contrary, the result in the Williamsburgh case contradicts its very existence. In that case, the debtor was a municipal corporation and it undoubtedly was able to conduct its affairs in a business-like manner. The result in the Williamsburgh case negates the exception which the claimants now assert.

The claimants contend that Young v. Hill, supra, shows that the New York courts will not deal as harshly with interest on interest situations as with compound interest cases. In a paragraph of that opinion, 67 N.Y. at page 174, 23 Am.Rep. 99, the Chancellor said, obiter dictum, "An agreement to pay simple interest upon the several instalments of interest as they became due and a computation based upon such agreement, applying the payments as made first to the payment of interest until all is paid, might not be unreasonable or inequitable." The bondholders contend that this single sentence in an opinion otherwise detrimental to their position indicates that the court considered interest on interest different from compound interest. But this observation seems to pertain only to the implied subsequent promise necessary for collection of such interest; that is, it shows that a promise would be implied more readily in interest on interest cases than in compound interest cases. It is to be doubted, however, that, when read with the rest of the opinion, it holds that an express promise made when the contract was executed would, as the bondholders here claim, create a binding obligation to pay interest on interest. But if there is merit to the interpretation suggested by the bondholders herein, it may be observed that the Williamsburgh case does not follow the dictum referred to.

 It is urged that the Williamsburgh case indicates a tendency on the part of the New York court to relax the so-called public policy objection to the collection of interest on interest because that court recognized as an exception to the rule that, when an interest coupon was detached from the bond and held by one other than the bondholder, interest could be collected on such coupon. It is contended, therefore, that this exception recognizes that the collection of interest on an interest coupon is not inherently objectionable. But it is evident that this exception merely recognizes that, under such circumstances, the interest coupon becomes in fact a principal obligation and should not be characterized as an interest obligation. Therefore, payment of interest on an interest coupon, when detached from the bond and held by one other than the bondholder, is not considered by the New York courts to be payment of interest on interest, but merely payment of interest on a principal obligation. Whether the basis for this exception

is sound is not for this Court to determine. It does not, however, furnish any particular support for the position that this exception justifies the view that there should be a relaxation of the State's public policy regarding the collection of interest on interest under the circumstances herein.

The claimants also point to American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C.N.Y.1939, 26 F.Supp. 954, and certain dictum in Transbel Investment Co. v. Roth, supra, as authority for their position herein. The opinion in the American Brake Shoe case referred to was written by Judge Patterson, but it is in conflict with a strong dictum by another New York judge, Judge Mack, who had previously considered the identical situation under the Federal law prior to Erie Railroad Co. v. Tompkins. That Judge Mack would have denied interest on the coupons if the New York law was to be applied seems clear. See American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C., 11 F.Supp. 418. Judge Patterson's opinion is also in conflict with the result in Transbel Investment Co. v. Roth, which clearly holds that the general rule in New York is identical in interest on interest and compound interest cases. Moreover, Judge Patterson's decision is in conflict with Columbus S. & H. R. Co., supra. It would seem that his decision overlooked the fact that the Williamsburgh case adopts the compound interest rule of Young v. Hill, and his conclusion that compound interest and interest on interest are essentially different is impaired factually by the interest computations on the $1,000 bond hereinbefore referred to. It will be remembered that Judge Clancy pointed out in the Transbel Investment Co. case that interest on interest seems to differ from compound interest in New York only in quantity, not quality. In passing, it may not be amiss to note that Judge Patterson was confronted with a somewhat unique situation, and the question of interest on interest in the receivership before him presented some very practical considerations. He was dealing with a proceeding in which the identical question under this same bond issue had been before Judge Mack (American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C., 11 F.Supp. 418) some years before. Judge Mack, before Erie Railroad Co. v. Tompkins, although holding that, under New York law, interest

on interest could not be collected, applied the Federal decisions and the precedents already established in the New York Federal courts in allowing interest on interest. When the question was presented to Judge Patterson, he was bound to follow the New York law in view of the advent of Erie Railroad Co. v. Tompkins. The bondholders urged him to follow Judge Mack's ruling as the law of the case. However, the alleged binding effect of Judge Mack's order with reference to the payment of interest on interest was not discussed. Although the New York law was interpreted contrary to Judge Mack's views, the result which was reached by Judge Patterson was in harmony with the alleged law of the case. Thus, there was no disruption in the payment of interest on interest which had been authorized by the preceding judge in charge some years before.

Reliance is placed by the claimants on the dictum in Transbel Investment Co. v. Roth, supra, in which Judge Clancy states, "The payment of interest on the coupons of bonds of a large issue generally distributed, Williamsburgh Savings Bank v. Solon, 136 N.Y. 465, 32 N.E. 1058; American Brake Shoe & Foundry Co. v. Interboro Co., D.C., 26 F.Supp. 954, constitutes an exception in the sense that the policy does not there apply." But in bottoming this statement on the authority of the two cases mentioned, it would seem that the court fell into error. Neither of these cases is based upon any exception to any rule as indicated in the dictum. In the American Brake Shoe case, Judge Patterson simply construed the teachings of the New York cases as permitting the collection of interest on interest. He did not limit his construction to cases involving coupons on large bond issues which were held by the public. An analysis of Judge Patterson's decision suggests that he concluded that every situation where there is an express promise by the creditor, interest on interest is permitted in New York. The Williamsburgh case was concerned with the payment of interest on bond coupons issued by a municipality and presumably the bonds were generally distributed, but no such exception as enunciated in the Transbel Investment Co. case can be gleaned from that case.

The claimants refer to two decisions by special masters in other reorganization proceedings. They were apparently approved by the United States District Court in which the reorganization was pending, but no opinions were rendered by the court. While both reports discussed the New York law, one, the Brooklyn Rapid Transit Co., was decided before Erie Railroad Co. v. Tompkins, and the other, Seaboard Air Line R. Co., was decided after that decision. The Master's report in the Brooklyn Rapid Transit Co. case in effect ignores the difference between the holdings of the New York courts of law and the courts of equity. In the Seaboard case, the Master's report seemed sufficiently broad to sanction in New York the collection of compound interest, as well as interest on interest. The results reached by these masters may seem rational and reasonable in light of the weight of authority as evidenced by the decisions of other courts throughout the country. But, when they are carefully analyzed, they seem to conflict with the well-established policy and rules of the New York courts of equity.

This Court's duty is to determine what the New York rule is, not what it should be. Harsh and inequitable circumstances arising in the early New York cases may have occasioned the pronouncement of a policy which is too sweeping for all situations. But there are no intimations in the decisions of that State that less harsh circumstances would ameliorate the rule. It would seem that, after a careful consideration of the New York cases, one cannot escape the conclusion that they do not differentiate between interest on interest and compound interest in applying the so-called policy of that State. If it can be said that a burden rests upon the objectors herein to establish that the New York law denies recovery of interest on interest under the circumstances herein, then it must be concluded that such burden has been fairly sustained.

In harmony with the views hereinbefore expressed, therefore, it follows that the petition of the First General Mortgage bondholders and the Superior and Duluth Division and Terminal First Mortgage bondholders requesting that they be allowed interest on overdue interest coupons, in establishing their claims in the above proceeding, must be denied. An appropriate order to that effect may be presented.

■ II. The Superior and Duluth Division and Terminal First Mortgage (hereinafter called the S. and D. mortgage) bears interest at the rate of four per cent.

It became due on May 1, 1936. The mortgage was executed and delivered in the State of New York and the interest thereon is payable in that State. The mortgage does not expressly prescribe the rate at which interest is to accrue after maturity. The S. and D. bondholders contend that they are entitled to six per cent interest after maturity in accordance with the New York law. But the debtor's Trustees, the First General Mortgage bondholders, and the First Refunding Mortgage bondholders, while recognizing that the S. and D. bondholders are entitled to interest after maturity, contend that only four per cent can be allowed. The general rule in New York is that the statutory interest rate governs unless the parties have stipulated in the contract for a different rate. O'Brien v. Young, 1884, 95 N.Y. 428, 47 Am.Rep. 64, Metropolitan Savings Bank v. Tuttle, 1943, 290 N.Y. 497, 49 N.E.2d 983, 147 A.L.R. 1019. It is suggested by the debtor's trustees and the First Refunding bondholders that the mortgage should be construed so as to imply an agreement to pay four per cent on the bonds after maturity. As noted, the S. and D. bondholders contend that the mortgage is silent on this question and that the New York law governs. The First General bondholders, apparently recognizing that the mortgage is silent on the question, contend that the Minnesota law, the law of the forum, should apply, and not the New York law. It appears, therefore, that two questions arise: (a) Does the mortgage impliedly provide for a given rate of interest on the principal after maturity? And (b), if Question (a) is answered in the negative, does the Minnesota or New York interest statute apply? These questions will be considered in order.

 (a) All parties recognize that the S. and D. mortgage does not expressly provide for any rate of interest payable after maturity. If the four per cent rate is to be applied, it must be implied from the terms of the contract. The debtor's trustees and the First Refunding bondholders contend that, if the mortgage is read as an entirety, such an implication appears. They point out that every other interest situation which could arise is provided for expressly, so they urge that silence on the question in light of the circumstances indicates an intent that the pre-maturity rate continues after maturity. Section 13 of Article Three of the mortgage particularly is emphasized as indicating the care taken in attempting to provide for every contingency that might arise. But it will be noted that nothing therein reflects any intent of the parties as to their agreement regarding interest on the principal after maturity. This section reads:

"The Central Company covenants (1) in case default shall be made in the payment of any interest on any bonds at any time outstanding and secured by this indenture, and such default shall have continued for a period of six months, or (2) in case default shall be made in the payment of the principal of any such bonds when the same shall become payable, whether at the maturity of said bonds, or by declaration as authorized by this indenture, or by a sale of the mortgaged premises as hereinbefore provided, then upon the demand of the Trustees the Central Company agrees to pay to the Trustees for the benefit of the holders of the bonds and coupons hereby secured and then outstanding, the whole amount due and payable on such bonds and coupons, for interest or principal, or both, as the case may be, with interest upon the overdue instalments of interest at five per cent. per annum; * * *."

But to imply an intent merely from a failure to state the intent expressly seems unsound unless other facts and circumstances aid their inference. Nothing in the sections relied upon seems to furnish any support for the contention. In fact, the specifying of interest rates for all the situations, except the rate of interest upon the principal after maturity, might well indicate that the parties intended that the statutory rates should apply in accordance with whatever rights the parties may establish under the law as to interest after maturity. The suggested implication in the terms of the mortgage, therefore, seems unsound. True, the drafter of the instrument may have assumed that he had provided for a four per cent rate after maturity, and through inadvertence failed to do that which was intended. But the Court cannot make the contract for the parties in absence of language or other circumstances which fairly imply the agreement between the parties. It is concluded, therefore, that the mortgage provides for no interest rate on the principal after maturity.

 (b) In determining the rate of interest to be allowed on the S. and D. bonds after maturity, reliance is placed by the First General Mortgage bondholders

on Klaxon Co. v. Stentor Elect. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, and Federal Surety Co. v. A. Bentley & Sons Co., 6 Cir., 1931, 51 F.2d 24, 78 A. L.R. 1041. However, the Klaxon case merely holds that the conflict of law rules of the State in which the court is sitting should be applied. McCulloch v. Canadian Pacific R. Co., D.C.Minn., 1943, 53 F.Supp. 534. The Minnesota conflict of law rules seem to require New York law to be applied to the interest question herein; that is, Minnesota holds that the law of the State in which the contract is to be performed governs the performance of the contract. McCulloch v. Canadian Pacific R. Co., supra. At least, by implication, Minnesota also holds that, where interest is payable as damages, the law of the place of performance governs the rate which should be payable. Desnoyer v. McDonald, 4 Minn. 515, Gil. 402; Cooper v. Reaney, 4 Minn. 528, Gil. 413. Federal Surety Co. v. Bentley, supra, appears to represent the minority view and does not purport to state the conflict of law rules for the State of Minnesota. It was decided before Erie Railroad Co. v. Tompkins.

It follows, therefore, that since the S. and D. mortgage does not state the rate of interest payable on the principal after maturity, and in view of the Minnesota conflict of law rules, the New York statutory interest of six per cent must be applied to the S. and D. bonds after maturity. An appropriate order to that effect may be presented. Some question has been raised as to the contention of the S. and D. bondholders wherein it is asserted that they are entitled to interest semi-annually. But in view of the holdings of this Court with reference to the interest on interest question, this contention now becomes unimportant.

III. The proof of claim of the First General Mortgage Trustees amounts to $21,245,000. This amount includes $1,047,000 of bonds now held by the Mortgage Trustees and a $1,000 bond held by the debtor. Objections to this claim have been filed by the Trustees of the debtor on the ground that the $1,047,000 of bonds now held by the Mortgage Trustees and the $1,000 bond now held by the debtor have been paid and are no longer outstanding as a claim against the debtor of this estate. Similar objections have been filed by the Trustees of the First Refunding mortgage and by the Soo Line, a creditor in this

proceeding. Counsel for the First General Mortgage Trustees have notified the Court that no claim will be made with respect to the $1,000 bond held by the debtor. The question is, therefore, whether the $1,047,000 of bonds held by the Mortgage Trustees constitutes a part of the provable claim of the Mortgage Trustees under the admitted facts herein. A brief review of the agreed facts may be recited.

The Debtor, in its First General Mortgage, encumbered its land grant lands. The mortgage provided for the sale and release of such lands from time to time and the disposition of the proceeds. It is further provided (Section 5 of Article Eight) that the net proceeds of the sale "shall be invested by the Trustees in purchasing bonds secured by this indenture whenever such bonds can be purchased at a price not exceeding par and accrued interest; if such purchase cannot be effected within three months after the receipt of such proceeds, the Trustees shall, if the Railway Company so requests, purchase said bonds at any higher price fixed by the Railway Company; but if the Railway Company does not so request, such proceeds shall be paid to the Railway Company in the manner and for the purposes specified in Section 4 of Article One of this indenture."

From the date of the mortgage until the date of the receivership, some thirty years, the Mortgage Trustees purchased a total of $4,239,000 bonds with funds deposited in its land grant sales account, all of which were cancelled from time to time with the exception of $3,000 principal amount purchased the day before the receivership, but not delivered to the Mortgage Trustees until the day after the receivership. The record indicates that, up to the time of the receivership, the Mortgage Trustees furnished statements to the persons auditing the books of the Debtor showing that the bonds so purchased by land grant funds were "redeemed and cancelled."

One additional purchase prior to the receivership should be referred to. The Mortgage Trustees purchased $157,000 of bonds and segregated them in what was termed the "tax reserve fund" set up by agreement between the Trustees and the Railway Company, so as to provide a reserve for current expenses including taxes in the event that the proceeds of the land grant account might become insufficient for such purposes. After the receiv-

ership, the tax reserve fund was terminated and the bonds turned over to the land grant account. The $157,000 of bonds and the $3,000 of bonds purchased a day prior to the receivership were held by the Trustees as uncancelled. The balance of the $1,047,000 of bonds now held as uncancelled by the Mortgage Trustees was purchased subsequent to the receivership in pursuance of the orders of this Court, but no provisions are contained in the respective orders with reference to the status of the bonds so purchased as being cancelled or uncancelled. It may be noted, however, that no interest has been paid on these bonds during the receivership, although the balance of the issue in the hands of the public have, from time to time, been paid interest since the advent of the receivership proceedings.

The position of the First General Mortgage Trustees herein does not appear to be entirely clear. Certainly, these bonds have been paid and cannot be resuscitated so as to justify another payment. If the Trustees contend that these bonds should participate in the assets of the Debtor to the extent needed to permit full satisfaction of the $20,197,000 of bonds outstanding, their position is equally untenable. Although the security of the mortgage has been reduced by the sale of the land grant lands, the bond issue which is thus secured has been proportionately reduced. It is difficult, therefore, to understand any theory which affords any support for the further participation of the $1,047,000 of bonds in the assets of the debtor for any purpose. Moreover, it is significant that for over thirty years the parties themselves construed the mortgage provisions by cancelling all bonds so purchased. Certainly, it seems fair to accord great weight to the construction which the parties themselves have placed on the provisions of the mortgage over a period of these many years. As stated by the Georgia court, quoting the Supreme Court of the United States in Brooklyn Ins. Co. v. Dutcher, 95 U.S. 269, 273, 24 L.Ed. 410,

" 'There is no surer way to find out what parties meant, than to see what they have done.' " In re Central of Georgia Ry. Co., D.C.S.D.Ga.1945, 58 F.Supp. 807, 819. There is an utter absence of any provisions in the mortgage which would suggest that the bonds so purchased from land grant funds were to be kept alive. There is no provision which would indicate that the parties assumed that the bonds thus bought would ever be sold, or that interest would be paid thereon or that the bonds would be held as security for the remaining bonds. All of the net proceeds derived from land grant sales were to be used for the purchase of bonds or for additions and betterments on the railroad under certain circumstances. The land grant lands were a substantial part of the property mortgaged. These lands were of no use to the Railway Company in the operation of its railroad, and should, of course, be reduced to cash when opportunity afforded. It is fair, therefore, to find that all of the circumstances fairly justify the view that the parties intended that the utilization of the net proceeds derived from the sale of such lands in the purchase of bonds should result in a concurrent reduction of the mortgage indebtedness. This was not only the view adopted by the parties, but it seems reasonable and entirely consonant with the mortgage provisions. In passing, it may be noted that the word "invest" as used in Section 5 of Article Eight of the mortgage does not necessarily connote a purchase of bonds for the purpose of collecting income or to hold the bonds so purchased for profit. New England Mutual Life Ins. Co. v. Phillips, 1886, 141 Mass. 535, 6 N.E. 534. The Court's view, therefore, is that the $1,047,000 of bonds now held uncancelled by the First General Mortgage Trustees are no longer outstanding or entitled to share in the assets of the Debtor for any purpose. An appropriate order in harmony with the views expressed herein may be presented.

An exception to each and every provision of this memorandum is reserved to each and every aggrieved party.