### In re WISCONSIN CENT. RY. CO.
#### No. 17104.

United States District Court
D. Minnesota, Fourth Division.

Oct. 2, 1950.

See also D.C., 72 F.Supp. 669, D.C., 74 F. Supp. 85.

Cornelius W. Wickersham, Jr., Edwin Martenet, of New York City (Cadwalader, Wickersham & Taft, of New York City, of counsel), for Protective Committee for holders of First General Mortgage bonds.

Samuel H. Morgan, of St. Paul, Minn., M'Cready Sykes, of New York City, Morgan, Chase, Headley & Hoshour, of St. Paul, Minn., and Stewart & Shearer, of

New York City, for United States Trust Co. of New York, as Trustee of First General Mortgage.

Reese D. Alsop, of New York City (Hunt, Hill & Betts, of New York City, of counsel), for Gaston Group, holders of First General Mortgage bonds.

James E. Dorsey, Donald West, and Dorsey, Colman, Barker, Scott & Barber, all of Minneapolis, Minn., for Edgar F. Zelle, trustee of debtor.

J. L. Hetland and E. E. Boyner, of Minneapolis, Minn., for Minneapolis, St. Paul & Sault Ste. Marie R. Co.

Henry S. Mitchell, of Minneapolis, Minn., (Leonard H. Murray, of Minneapolis, Minn., of counsel), for Canadian Pac. R. Co.

William G. Murphy, of New York City, and Thomas P. Helmey, of Minneapolis, Minn., for Trustees of First and Refunding Mortgage.

Abraham K. Weber, of New York City, for Preferred Stockholders Committee.

Josiah Brill, of Minneapolis, Minn., and Jaffin, Schneider, Kimmel & Galpeer, of New York City (Irving J. Galpeer, of New York City, of counsel), for First and Refunding Mortgage Bondholders Committee.

NORDBYE, Chief Judge.

The Wisconsin Central Railway Company, hereinafter called the debtor, is in reorganization under the jurisdiction of this Court. On July 1, 1949, the fifty year 4% First General Mortgage bonds issued by the debtor commencing on or about July 1, 1899, matured by their terms. But they were not paid. The Trustee of the First General Mortgage, the Protective Committee for the First General Mortgage bondholders, and the so-called Gaston Group, which holds a number of the First General Mortgage bonds, now urge this Court to allow 6% interest on the bonds after July 1, 1949, rather than the 4% allowed by the mortgage prior to that date. The 6% rate is the rate of interest set by New York law, after maturity of an obligation which remains unpaid unless a contrary agreement exists. This Court previously has held in a similar situation arising in this reorganization that New York law was the applicable state law, and that decision controls that question here. See In re Wisconsin Central Ry. Co., D.C., 63 F.Supp. 151, 159.

The objectors contend, however, that New York's interest rate should not be applied here. They argue principally that (1) the First General Mortgage provides by implication for 4% interest, not 6% interest, after maturity, and (2) equitable principles which must be applied in bankruptcy proceedings prevent allowance of the 6% interest rather than the 4% regardless of the law of New York. All objectors recognize, however, that the First General bondholders are entitled to 4% interest after maturity, just as they were before maturity. Everyone also recognizes that the First General Mortgage debt is fully secured and that sufficient money is available from that security and the income earned therefrom to pay even the 6% rate of interest sought here.

The First General Mortgage fails to provide expressly for the rate of interest payable after July 1, 1949. So any agreement that the interest rate after July 1, 1949, should be 4% must be implied from the terms of the mortgage. The First General Mortgage is essentially like the debtor's Superior and Duluth Division Mortgage. This Court already has held that that mortgage contained no express or implied agreement as to the interest payable after the maturity date of the bonds to which that mortgage related. In re Wisconsin Central Ry. Co., D.C., 63 F.Supp. 151, 159. In fact, some of the provisions of the two mortgages are essentially identical. Reference is made to Section 14 of Article Four of the First General Mortgage as the provision which is essentially different from the Superior and Duluth Division Mortgage. That provision provides that "interest upon the overdue installments of interest" shall be "at the same rate as the respective bonds on which such installments of interest shall be overdue; * * *." This section, however, does not purport to state or set the interest which should be

allowed on the bonds after the 1949 maturity date, either expressly or by necessary implication. Nor does the provision throw any light upon the intention of the parties in that regard. In that the bonds admittedly bear interest at 4% before maturity, and if it should be determined that the bonds bear 6% interest after maturity, this provision might tend to establish that interest on overdue installments of interest should be computed accordingly. However, this provision does not tend to avail the objectors in the position they urge with reference to interest after maturity on the mortgage debt. This Court did point to Section 14 of Article Four in denying the First General Mortgage bondholders an increased rate of interest for the period between the accelerated date of maturity as set by the mortgage trustee and the maturity date of July 1, 1949. In re Wisconsin Central Ry. Co., D.C., 69 F.Supp. 693. But there the provision was noted along with other provisions of the mortgage which shed light upon the question then raised. No expression was made or intended by the Court as to the provision's effect for the period following July 1, 1949. The Court concluded that all the provisions, read together, indicated the intent that when the mortgage was executed, the parties did not intend the so-called legal rate of interest of 6% to be paid on the mortgage between any accelerated date of maturity which might occur and the July 1, 1949, maturity date. Aid from other provisions of the mortgage is not available in the instant situation to justify a similar conclusion with respect to interest after July 1, 1949. And in the discussion in 69 F.Supp. 693, at page 697, the Court recognized that the question of the interest rate after maturity was undecided, in that it stated, "The various provisions of the contract referred to all tend to substantiate the view that, regardless of default and declaration by the Trustees to mature the debt, the rate of interest on the debt as agreed between the parties will prevail, at least until July 1, 1949."

■ A consideration of the First General Mortgage provisions shows that no provision therein either expressly or impliedly establishes the rate of interest to be paid after maturity on July 1, 1949. Under such circumstances, the New York statutory rate of 6% applies, In re Wisconsin Central Ry. Co., D.C., 63 F.Supp. 151, unless the equities to be given effect by a bankruptcy court prevent the allowance of such a rate. Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162.

■ The objectors urge that the 6% interest should be denied upon the general equitable principles applicable in bankruptcy proceedings. They rely upon Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162. That decision was rendered after this Court's decision concerning the interest rate applicable to this debtor's Superior and Duluth Division Mortgage bonds following their maturity. The Vanston decision's applicability to railroad reorganization proceedings was recognized by the Supreme Court's per curiam decision in Fleming v. Traphagen, 329 U.S. 686, 67 S.Ct. 365, 91 L.Ed. 602. That decision, which concerns the Rock Island Railroad reorganization, relies upon the Vanston case as authority for its result. In order to determine the applicability of the Vanston case to the present question, analysis of that decision and the instant situation is necessary.

In the Vanston case the debtor was in reorganization, under jurisdiction of the court. Certain coupons of the petitioners' bonds had not been paid, and the petitioners sought to enforce the mortgage's covenant that interest should be paid upon all overdue coupons. That is, they sought interest on interest. The debtor there possessed sufficient assets with which to pay the interest coupons and the bonds before reorganization, but a court order made during reorganization prohibited payment of the interest coupons during reorganization. The Supreme Court held that the interest on the coupons (interest on interest) in that situation would be inequitable under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., and denied the bondholders' petition for that interest. Payment of the interest

on interest was inequitable, the court held, because the debtor was prevented from paying the coupons by reason of the reorganization proceedings and the court's order made thereunder. The court held that to permit interest on the coupons in such a situation would constitute an inequitable additional compensation due to the reorganization proceedings. The court's conclusions, 329 U.S. at pages 166 and 167, 67 S.Ct. at page 242, 91 L.Ed. 162, of its majority opinion are clarifying. The court said, " * * * The extra interest covenant may be deemed added compensation for the creditor, * * *. * * * first mortgage bondholders would have been enriched and subordinate creditors would have suffered a corresponding loss, because of a failure to pay when payment had been prohibited by a court order entered for the joint benefit of debtor, creditors, and the public. Such a result is not consistent with equitable principles. For legal suspension of an obligation to pay is an adequate reason why no added compensation or penalty should be enforced for failure to pay."

The broad principle enunciated by the Supreme Court in the Vanston case was that it would be inequitable for additional compensation and profit to be made by reason of a reorganization proceeding until other creditors' claims also were met. The additional compensation in the form of interest on interest in the Vanston case, the court noted early in its opinion, 329 U.S. at page 159, 67 S.Ct. 237, 91 L.Ed. 162, would reduce the assets which could be distributed to the other creditors.

In the instant case, the debtor also is in reorganization under the Court's jurisdiction. In order to conserve the assets and enable the debtor to reorganize as a unit, the usual restraining order was issued enjoining the payment of any principal or interest on any bonded indebtedness of the debtor without order of the Court. Orderly reorganization and the interest of the debtor, the creditors, and the public required that the First General bondholders wait with the payment of their principal when the mortgage became due on July 1, 1949. The bonds were fully secured and so far as the evidence here shows, they could have been retired or refunded before the date of their maturity but for the reorganization proceedings and the order of the Court thereunder. And obviously no other conclusion could be consistently urged by the First General Mortgage bondholders in view of their emphasis on the quality of their mortgage and the substantial excess of their security over the mortgage debt. This mortgage is secured by the debtor's main line, which is the very heart of this railroad system. It would appear that no reorganization could be effected without maintaining the status quo of the lien on this part of the debtor's assets. Essentially, therefore, the instant case and the Vanston case are similar. There, the extra interest arose because the debtor was prohibited from paying matured bond coupons because of the reorganization proceedings and the court's orders thereunder. Here, the extra interest arose because the reorganization proceedings and the Court's order prevented payment of the matured bonds. The extra interest sought in both cases arises as a result of the reorganization proceedings and the Court's orders thereunder.

The fact that interest on interest was involved in the Vanston case and so-called simple interest is involved here does not distinguish the cases from each other. Both involve additional compensation because of the reorganization. The Vanston case does not turn on the form taken by that additional compensation. The decision is based upon the fundamental premise that extra or additional interest, accruing to creditors because of reorganization proceedings and the court orders necessitated thereby, should not be allowed by the bankruptcy court. The Supreme Court found that interest on interest fell within that category in that case. Nothing indicates that the decision turned only on the fact that interest on interest was involved. The teachings of the decision are broader than the facts to which the rule was applied. Because the added simple interest in the instant case also arose as additional compensation due to a reorganization proceeding and the Court's or-

ders thereunder, it too must fall within the same category as interest on interest. Like in the Vanston case, payment of the additional interest here would reduce the assets available to other creditors who are subsequent to the First General Mortgage bondholders. It would offend the equitable principles enunciated in the Vanston case and be inconsistent with the purposes of the Bankruptcy Act.

The Mortgage Trustee and other petitioners argue that the debt here is fully secured, and that the additional interest was fully earned by the security here, whereas that factor appears to have been absent in the Vanston case. If that difference exists between the cases, it forms no basis for distinction. The Vanston case does not proceed upon the theory that the claim for interest on interest was unsecured. The inequitable compensation factor was the court's major premise, and that premise seems applicable regardless of the security or lack of security. It is just as inequitable for secured creditors to obtain additional compensation as a result of the reorganization proceedings and the measures necessary under it as it is for unsecured creditors to obtain it. In either case the payment to the claiming creditor reduces the assets available to the other creditors who also contributed to the debtor's cause prior to its bankruptcy. Reorganization proceedings are not intended to be a means for a creditor to obtain additional income through the orders which were made necessary for preservation of the estate, and for the benefit of the creditors, the debtor, and the public. If the petitioners' contention regarding the distinction based upon security were adopted, then a claim made by a creditor for additional compensation of any amount in reorganization after maturity would be equitable if secured. That the adequacy of security is not synonymous with equitableness seems self-evident. Although the amount of additional compensation obtained as a result of the reorganization and a court's order under it may determine the *degree* of inequitableness or equitableness, it cannot, by itself, determine the *fact* of

equitableness. So although the petitioners here seek only a 2% additional interest after maturity, these proceedings may continue for some time. Their termination is not definitely visible at this time. The amounts of additional interest which they might receive over the period as it finally develops may be very substantial. And it may be noted that an increase of fifty per cent in the interest after maturity would result in an added compensation to the First General Mortgage bondholders in the sum of $295,300 annually. The requirements of cash in the current operation of the road and for additional equipment are large. An annual outlay of this magnitude would be a serious drain on the cash on hand. The reorganization plans are now before the Interstate Commerce Commission and there are undoubtedly many junior creditors whose claims will be accorded only partial recognition in any reorganization plan finally adopted. Realistically, the payment of the extra compensation requested, which under the New York law is merely a fixed measure of damages allowed for breach of contract in failing to pay the mortgage debt when due, O'Brien v. Young, 1884, 95 N.Y. 428, 433, 47 Am. Rep. 64, is just as burdensome and onerous as if the payment could be properly characterized as a penalty as in the Vanston case.

The petitioners advance various other facts which they contend constitute equities in their favor. They point out that, in addition to possessing fully secured claims, their mortgage was executed prior to the time when the other bondholders herein obtained their claims, that the First General Mortgage bonds are a first lien and are entitled to be paid first, that the Superior and Duluth Division Mortgage bonds were awarded 6% interest after maturity of their bonds, and that the First General Mortgage is secured by the debtor's main line, which has earned most of the debtor's earnings and constitutes the principal asset of the debtor's property. But these equities are not persuasive for the proposition that the First General Mortgage bondholders should obtain additional com-

pensation from the reorganization proceedings at the expense of other creditors. The fact of first lien goes to the quality of the claim and does not justify a profit otherwise inequitable under the Supreme Court's interpretation of the Bankruptcy Act. Quality does not necessarily determine quantity.

Inasmuch as the Vanston case was decided subsequent to this Court's decision on the Superior and Duluth Mortgage interest question, this Court was not required to determine the issues present there upon the factors enunciated by the Supreme Court in the Vanston case. Moreover, no interest at the rate of 6% or any other rate has been paid upon the Superior and Duluth Division bonds during reorganization. The question of any inequity in any proposed payment of such extra compensation on these bonds has not been argued or presented to this Court, and in view of the circumstances, that question perhaps is moot.

In view of these premises, the First General Mortgage bondholders are not entitled to receive the additional interest after the maturity which occurred during reorganization. This conclusion, however, is not intended to impair the First General Mortgage bondholders' claim to 4% interest after maturity on July 1, 1949, which all parties recognize as equitable. The Vanston case does not purport to deny all simple interest after maturity. Georgia, Florida & Alabama R. Co., v. Bankers Trust Co., 5 Cir., 1948, 170 F.2d 733, 734. It merely purports to prevent inequitable additional compensation in the form of interest payments.

The first argument of the objectors, therefore, must be rejected. The second one must be sustained. The First General Mortgage bondholders are entitled to, and should, receive 4% interest after July 1, 1949. Their petition for any additional amount of interest must be, and hereby is, denied. It is so ordered.

An exception is reserved to the aggrieved parties.